**STATE of Missouri, Respondent,**

v.

**William SPEED, Appellant.**

**No. 54286.**

Supreme Court of Missouri, Division No. 2.

Sept. 14, 1970.

Motion for Rehearing or for Transfer to Court En Banc Denied Oct. 12, 1970.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

Elliott & Marks, Murry A. Marks, Forriss D. Elliott, St. Louis, for appellant.

DONNELLY, Presiding Judge.

In this jury-waived case, appellant, William Speed, was convicted of unlawful possession of narcotics under § 195.020, RSMo 1959, V.A.M.S., by the Circuit Court of the City of St. Louis, and his punishment was assessed at imprisonment in the custody of the State Department of Corrections for a term of five years. § 195.200, RSMo 1959, V.A.M.S. An appeal was perfected to this Court.

The primary question presented is whether the search of an automobile which produced the evidence on which the conviction rests was constitutionally permissible.

In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (decided June 22, 1970), the United States Supreme Court re-emphasized that the search of an automobile, even though not incident to an arrest, may be constitutionally permissible if there is probable cause for the search. The Court said:

"In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. * * * The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

"'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' 267 U.S., at 158–159, [45 S.Ct. 280].

"Finding that there was probable cause for the search and seizure at issue before it, the Court affirmed the convictions.

\* \* \* \* \* \*

"In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. *Carroll, supra,* holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible."

In Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, the United States Supreme Court held that probable cause "has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543."

██ We turn then "to the question of whether or not the record in the case before us can support a finding of probable cause" for the search. Beck v. Ohio, 379 U.S. 89, 92, 85 S.Ct. 223, 226, 13 L.Ed.2d 142. We have reviewed the record on appeal and believe there is substantial evidence to support the following findings of the trial court:

"Two St. Louis police officers, John Jones and Robert Loehr, kept a lookout for Defendant William Speed for parts of several nights prior to July 28, 1967. To accomplish this purpose they hid in a walkway on the south side of Enright Avenue between two buildings, 4060 and 4066 Enright Avenue, from which point of vantage they could see the ground floor front entrance to Defendant Speed's apartment located on the west side of Sarah Street, a short distance north of its intersection with Enright, in the central part of St. Louis. The police watched Defendant Speed's doorway through two sets of seven power \* \* \* binoculars. Since they were about 60 to 70 yards to the southeast of that entry to Speed's apartment, and the electric light was sufficient, they had an adequate opportunity to see persons and objects in the doorway area.

"On the evening of July 28, 1967, while keeping such a binocular surveillance, both policemen saw Defendant Speed on the sidewalk of Sarah Street immediately in front of the doorway to Speed's apartment. As they watched him through the seven power binoculars, both officers saw Speed go from the sidewalk to the doorway, reach up in the area of the interior lintel of the opened doorway and take in his, Speed's hand, some items including several small manila envelopes \* \* \*.

"The officers thereafter continued to watch Defendant Speed and saw him put these manila envelopes in his trouser pocket, then walk out onto the sidewalk and hand them to one William Cannon who put such items in his shirt pocket. Both Cannon and Speed then walked south on Sarah Street.

"Officer Jones went south through the gangway between 4060 and 4066 Enright and from a position in the rear of those buildings \* \* \* Officer Jones saw Cannon open the trunk of Cannon's automobile parked at the east curb of Sarah headed north, a short distance south of Enright Avenue. Cannon took the manila envelopes from his shirt pocket and placed them in an upturned hat in the trunk of that automobile \* \* \*.

"The two police officers then followed Cannon and Defendant Speed south on Sarah to Delmar (one block south of Enright) and arrested both Speed and Cannon. Thereafter, the police searched the trunk of Cannon's car and seized three manila envelopes from the hat in the trunk of Cannon's car.

"On later examination at the police laboratory, each manila envelope was found, by a qualified police expert, Robert Seto, to contain cannabis sativa or marijuana of the combined weight of 9.48 grams."

In addition, Officer Jones testified at the trial as follows:

"Q Now, Officer Jones, you have been previously sworn under oath and testified here Friday, April 26, 1968, is that correct?

A That's correct.

Q Now, before any of these dates in August '67 that you made a surveillance of this 909 North Sarah, had you received any information about that location and about any person or persons alleged to be living at that location?

&ast; &ast; &ast; &ast; &ast; &ast;

"WITNESS: On the 21st, prior to our taking up surveillance.

"Q &ast; &ast; &ast; Now, was that the 21st of July? A. That's correct.

"THE COURT: This is 1967?

WITNESS: 1967. We contacted an informant that had made and was in the process at that time of making other cases. At this time he took us through Whittier and Easton, where he pointed out an automobile which had belonged to a subject by the name of 'Speed'.

"Q &ast; &ast; &ast; He gave you the name 'Speed'?

A He gave us the name William, who we later found to be Speed. He then took us to 909 North Sarah, showed us the doorway, and told us approximately the time that there was usually activity there.

Q What time did he tell you?

A Just prior to dark and just after dark, in that area there. He also told us that the marijuana was kept up over the doorway on a ledge, just inside the doorway, on the back of the door facing. At this time that he pointed out the subject's car, at Whittier and Easton, he also pointed out the subject Speed, who was there, who we observed for approximately five minutes. He then got in the car and left. We took the license number down and we checked the license through the police computer and it came out issued to subject Speed at 909 North Sarah.

Q And had this informant, who had given you this information, given you or your partner, Detective Loehr, any information prior to the 21st? A Regarding this case?

Q No, regarding any case. A Oh, yes, sir, yes, sir.

Q On how many prior occasions had this informant given you information? A At a minimum of eight times.

Q All right. Had this information proven reliable in the past?

A Yes, sir. He had gone in and made purchases himself.

Q He had gone in and made purchases of narcotics himself?

A Yes, sir.

Q How long had you worked with this man?

A I would say approximately over a period of two and a half to three months.

Q To your knowledge had other members of the narcotics or vice division worked with this man?

A Not to my knowledge.

Q To your knowledge had he worked with any other police officers in any division or unit of the St. Louis Police Department?

A Not the St. Louis Police Department, no.

Q To your knowledge had he worked with any other law enforcement agencies in the United States?

A He worked with the Federal Government, the Federal Narcotic Bureau.

Q And was it based on this information that you and your partner set up this original surveillance at this residence at this address?

A Yes, sir, it was."

In Cooper v. California, 386 U.S. 58, 59, 87 S.Ct. 788, 790, 17 L.Ed.2d 730, the United States Supreme Court held that "whether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case * * *." We believe the record on appeal supports a finding of probable cause for the search in this case. Cf. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62. The search was constitutionally permissible.

■ Appellant contends the trial court "erred in its findings of facts and conclusions of law," and "in finding the appellant guilty beyond a reasonable doubt."

This is a jury-waived case. "Supreme Court Rule 26.01(b), V.A.M.R., provides that the findings of the court in a jury waived case 'shall have the force and effect of the verdict of a jury.' We therefore review this case in the same manner as though a verdict of guilty had been returned by a jury, and if there is substantial evidence to support the finding, it should be affirmed. State v. Haislip, Mo., 411 S.W.2d 81, 83." State v. Clark, Mo.Sup., 438 S.W.2d 277, 279–280. We believe there is substantial evidence to support the conviction.

The judgment is affirmed.

All of the Judges concur.