**STATE of Missouri, Respondent,**

v.

**Leroy MEEKS, Jr., Appellant.**

**No. 55115.**

Supreme Court of Missouri,
En Banc.

April 12, 1971.

Rehearing Denied May 10, 1971.

John C. Danforth, Atty. Gen., Harvey M. Tettlebaum, Asst. Atty. Gen., Jefferson City, for respondent.

Charles C. Allen, Jr., James W. Herron, St. Louis, for appellant.

SEILER, Presiding Judge.

Appeal from conviction and sentence of five years' imprisonment for possession of marijuana, Sec. 195.020, RSMo 1969, V.A.M.S. The decisive issue is whether the search of the automobile which produced the marijuana was lawful under state and federal constitutional limitations. We hold that it was not.

At 1:45 p. m. on April 20, 1969, Officer Marbs of the St. Louis Police Department, driving his police auto on Easton Avenue, noticed a 1962 Buick about two car lengths ahead, bearing a Missouri registration plate which had expired in March 1969. Officer Marbs turned on his red light and the Buick immediately pulled to the curb. The driver remained erect behind the steering wheel, in clear view, and made no motion toward the center of the car. Nothing was thrown from the car. Officer Marbs stopped a few feet behind the Buick, with the intention of issuing the driver a summons "for expired state license plate". He approached the Buick, going to the door on the driver's side. There were two occupants, both in the front seat. Defendant Meeks, the driver, produced his driver's license and said it was his car. Marbs then had Meeks get out of the car and told him he was under arrest for "expired state license plate". The officer next searched Meeks' person, found nothing, and then had both Meeks and the passenger step onto the sidewalk. Marbs then proceeded to search the automobile.

In a closed "console", located between the driver and passenger seats, Marbs discovered a plastic vial containing a small amount of a substance he believed to be marijuana. In the closed glove compartment, he found a yellow paper containing

a white powder. Marbs then placed Meeks under arrest for possession of marijuana, and he and the other officer (Marbs had earlier called an assist car) took defendant to the police station. The police laboratory analysis showed the vial contained three milligrams of marijuana. The composition of the white powder could not be determined. Meeks was charged with possession of the marijuana.

A motion to suppress the use of the marijuana as evidence was filed on constitutional grounds. There was a hearing on the motion, at which Officer Marbs was the only witness. He testified to substantially the above recital of the circumstances of Meeks' arrest. The motion was overruled.

The evidence at the trial was essentially a repetition by Marbs of his testimony on the motion to suppress. A technician testified that laboratory examination of the substance in the vial showed it to be marijuana. No evidence was offered by the defendant. The defendant stipulated to facts from which the application of the Second Offender Act was found. The jury returned a verdict of guilty of the offense charged and the trial court sentenced defendant to five years' imprisonment.

The issue here is the validity of a search of the appellant's *car* and not the validity of a search of his *person*.

Officer Marbs was the only witness on appellant's motion to suppress, and, taking the officer's testimony as true, we have, in short, the following situation: In the daylight hours on a certain date, the officer saw an expired state license on the rear of appellant's car, and upon signal from the officer, appellant pulled to the curb promptly and remained in the driver's seat; the officer asked appellant to get out of the car and appellant did so. On request, appellant produced a valid driver's license. Appellant was personally searched and no weapon or anything else of significance was found. Appellant was properly and routinely arrested for expired license plates. He was then asked to stand on the sidewalk, which he did. The foregoing constitutes the complete evidence upon which we are asked to uphold the validity of the next event, which was the thorough search of appellant's car.

Without attempting ad seriatim to list all that the evidence did not show, the presence of which in other cases has justified a search of a car, it is significant there was not a single fact or circumstance in evidence which was even claimed by the officer to raise any suspicion that appellant had done, was doing, or was about to do any illegal act, other than driving his car with expired plates. There were no facts in evidence upon which anyone could believe the officer was in any danger from the contents of the car. Both appellant and his passenger were completely outside the car when appellant was arrested. When asked what he was searching for, the officer replied that he "was not technically looking for anything."

Under the evidence, the search of the car constituted nothing more or less than a purely exploratory venture—a fishing expedition, and was not justified as incidental to this particular arrest nor as based on probable cause. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877.

To uphold the search of the car here would mean that every citizen who is validly arrested for any minor violation any place in Missouri and regardless of the circumstances, is automatically subject to having his car thoroughly searched. We can find no Missouri or other case in which a search of a car, without a warrant, after the arrested person has been removed from it, has been upheld upon a showing of nothing more than the mere isolated fact of arrest for a minor violation. Annotation, Search of Vehicle—Traffic Violation, 10 A.L.R.3d 314.

Were we to approve constitutionally this search of appellant's car, it would be tantamount to announcing that, insofar as searching automobiles is concerned, the provisions of Art. I, Sec. 15, of the 1945 Constitution of Missouri, V.A.M.S. and the Fourth Amendment of the United States Constitution are wholly impotent in Missouri once one event occurs, to wit: a valid arrest. We decline to do so.

The state cites State v. Moody (Mo. Sup.) 443 S.W.2d 802; State v. Robinson (Mo.Sup.) 447 S.W.2d 71, and the Durham cases, consisting of the original appeal in State v. Durham, 367 S.W.2d 619, and the post-conviction opinions in 386 S.W.2d 360; Durham v. Haynes, D.C., 258 F.Supp. 452, and 8 Cir., 368 F.2d 989. These cases, while upholding convictions resting on evidence obtained in a search following an arrest for a traffic violation, are not authority for upholding search of the automobile in the present case. State v. Moody is carefully limited to its precise facts, 443 S.W.2d l. c. 804. The search there, following a traffic arrest, involved only search of the person of the driver. State v. Robinson was stated to be governed by State v. Moody, 447 S.W.2d l. c. 73, and it, too, involved only a search of the person, even though there was a much more aggravated traffic violation than in the Moody case. The Durham case did involve a search of the vehicle, with apparently no search of the person of the driver or his two companions. The car search differed from the search before us in several respects: first, when the driver opened the door of the car to get out after being stopped by the highway patrol for driving with a partially obscured rear license plate, a corner of the pile of stolen goods which were hidden under a blanket in the rear seat was exposed to the officer's view, without any search; second, the search of the Durham car was justified as reasonably necessary to insure the safety of the arresting officers, as they had the three suspects drive their own car to the police station, trailing the patrol car.

The motion to suppress should have been sustained and the judgment is reversed and the cause remanded.

PER CURIAM.

The foregoing opinion by SEILER, J., is adopted as the Opinion of the Court.

SEILER and BARDGETT, JJ., concur.

FINCH, J., concurs in result and concurs in separate concurring opinion filed.

MORGAN, J., concurs in result and concurs in separate concurring opinion of FINCH, J.

DONNELLY, J., dissents.

HOLMAN, J., dissents in separate dissenting opinion filed.

HENLEY, C. J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

FINCH, Judge (concurring).

This case involves the important and difficult question of protecting citizens from constitutionally prohibited searches, on the one hand, and providing proper protection to arresting police officers, on the other. I have concluded to concur only in the result reached in the principal opinion for the reasons which follow.

At the outset, it is clear that the state does not seek to and cannot justify the search in this case on the ground that the officer had probable cause to believe the vehicle contained articles he was entitled to seize; hence cases such as Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L. Ed.2d 419, and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, have no application.

The view expressed in Judge Holman's dissent is that the search was proper because a valid arrest (even though for only a traffic offense) authorized an incidental

search for weapons of the portion of the vehicle from which arrestee might gain possession of a weapon.

Although I subscribe fully to the statement in State v. Moody, Mo., 443 S.W.2d 802, 804, "that police officers, while in the performance of their official duties, are entitled to all the safety and protection we can give them within constitutional limitations," I cannot join in the dissenting opinion herein for two reasons. In the first place, I do not believe that the transcript on appeal justifies a conclusion that this search in fact was one for weapons to protect the arresting officer. The transcript discloses that Officer Marbs told of asking defendant as to the ownership of the car, of checking the defendant's driver's license, of having defendant get out of the car, of searching his person but finding nothing, of then having the passenger alight from the car, and finally of searching the entire interior portion of the car. When Officer Marbs testified that defendant was standing on the sidewalk beside the car during this search, counsel for defendant sought to impeach him by showing that on a prior motion to suppress before another judge, he had stated that defendant was in the patrol car at the time of the search. Counsel, for that purpose, read to Officer Marbs certain questions and answers from the prior hearing, including the following: " 'What were you looking for when you searched Mr. Meeks' car? Answer: I was not technically looking for anything. I was searching the— Question: You were searching the car for your own protection? Answer: Yes, sir. Question: At the time Mr. Meeks was in the patrol car and the other person who was in the car—' and your answer was 'Yes.' " In my judgment, the record shows that this search was an investigatory or exploratory search rather than a protective one for weapons incidental to the arrest. Officer Marbs at no time in his testimony explained that he searched the car for weapons. The only reference to protection came in the above cited question and answer which were read to Officer Marbs by counsel in connection with possible impeachment on the basis of prior inconsistent testimony. That, in my opinion, was not sufficient to show that this was a protective search for weapons, and if it was not, then this was an unauthorized, warrantless search of the vehicle.

Secondly, I am unwilling in this case to hold that in connection with every valid arrest of a person on a minor traffic charge, there is an absolute right, incidental to that arrest, without more, to search the vehicle adjacent to the driver for weapons. That is the rule which the dissenting opinion would adopt. There is authority for such a rule, but there also is substantial authority to the contrary. A collection of cases and a discussion of this question can be found in Annotation, Search of Vehicle —Traffic Violation, 10 A.L.R.3d 314, and George, Constitutional Limitations on Evidence in Criminal Cases, 1969 Ed., p. 65.

My present view is that something more than a valid arrest for traffic offenses such as an expired license plate, or failure to have a city sticker, or for illegal parking, or for failure to signal a left turn, or for going an extra five miles per hour over the speed limit, is necessary to justify a search of the vehicle for weapons incidental to such arrest. Examples of the "something more" to justify such a search which I would require might consist of the operation of the car itself at high speed in an attempt to escape, weaving back and forth across the highway, suspicious conduct or movements of the driver as the officer approaches, or the presence of some visible suspicious article in the car as the officer approaches to talk to the driver. In my view, the factual situation that existed in State v. Moody, supra, would have justified a search of the vehicle for weapons as well as a search of the person. Counsel for defendant, in argument of this case, expressed a similar viewpoint. I am of the opinion that the same would be true of the factual

situation in State v. Robinson, Mo., 447 S. W.2d 71. I am not at all sure that the principal opinion is consistent with the viewpoint I here express, and that is one reason why I have concurred therein only in the result.

In addition, the principal opinion stresses the fact that both defendant and his passenger were completely out of the car when defendant was arrested and when the search of the vehicle occurred. There appears to be an implication that the fact that they were not in the automobile at the time of the search would prevent or destroy any right in the officer to search the vehicle for weapons incidental to a valid arrest. I cannot agree with such an implication. As a practical matter, the officer in most instances would need to remove the driver (and possibly also the passenger) in order to search the vehicle for weapons. After the driver (and possibly the passenger) were out of the vehicle, he would need to make the search to prevent the possibility of the person arrested from making a break and seeking to reach into the vehicle to obtain a weapon. In addition, if he were going to permit the arrestee to drive the car later, he would need to insure that a weapon was not available for use in attacking him after the arrestee was permitted back in the car.

I would reverse and remand for the reason that the search was not a protective search for weapons but was an unauthorized, warrantless, exploratory search.

HOLMAN, Judge (dissenting).

I dissent for the reason that I do not think the search was unlawful. The search was clearly an incident to a lawful arrest for a traffic offense. "The right to search incident to arrest is deeply rooted in the common law. The rule reflects, as Justice Cardozo once observed, a 'shrewd appreciation for the necessities of government.' As a practical matter, the courts recognized that a police officer must have some power to conduct an immediate search following arrest in order to remove any weapons from the reach of a suspect and to prevent him from destroying evidence of the crime. While early decisions limited the search to the person of the accused, the doctrine was extended in later years to things within the 'immediate possession' or 'control' of the suspect." Hotis, Search of Motor Vehicles, Dickinson Law Review, 1969, p. 421. And I approve the statement of Burton Agata in St. Louis University Law Journal, 1962, p. 6, that "The necessity to search for weapons or other instrumentalities for use in escape creates a situation where the interest of privacy is subordinated to the need for providing an arresting officer with an effective means to protect himself from bodily injury and, perhaps death. What then is the basis for suggesting that a person properly arrested has a claim to privacy which is greater than the interest in preserving the arresting officer's life, merely because the arrest is for a traffic violation?" The recent decisions in State v. Moody, Mo.Sup., 443 S. W.2d 802, and State v. Robinson, Mo.Sup., 447 S.W.2d 71, sustain the validity of the search of the person of the driver as an incident to the lawful arrest of the driver for a traffic offense. One basis of the holdings expressed in Moody is the necessity for providing the arresting officer with protection against injury or death. 443 S.W.2d 804. The question is whether or not this is sufficient reason for a search of that portion of the interior of the vehicle which is accessible to the driver. In Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694, the court found "ample justification * * * for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from which he might gain possession of a weapon * * *." In my opinion, the portion of the vehicle searched in this case falls within that limitation. It was within a few inches of the right hand of the driv-

er. It has been said that Chimel is not strictly applicable to a vehicle search situation but that is because a more liberal rule is applied in determining the validity of the search of an automobile. See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct.1975, 26 L.Ed.2d 419, and Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. However, the search in this case would be considered lawful even under a strict application of the Chimel rule. I think we should clearly state in this case that whenever an occupant of a motor vehicle is lawfully arrested (even for a traffic offense) the officer may search the area of the vehicle from which the arrestee might gain control of a weapon. This for the reason that it sometimes happens that such a person will unexpectedly and for no apparent reason seize a weapon and injure or kill the officer. While that does not happen often, a rule of law should be followed which would be likely to entirely prevent such an occurrence. As stated in Moody, "We believe that police officers, while in the performance of their official duties, are entitled to all the safety and protection we can give them within constitutional limitations." 443 S.W.2d 804.

In this case it is true that the defendant and his passenger had left the automobile when the search occurred. However, had he not found the marijuana, it is likely that the officer intended to permit them to resume possession of the car after he had completed the arrest process. In that situation it was entirely reasonable, for his protection, that he first ascertain whether any weapon would be available to them at that time. While the decision in Moody was expressly limited to a situation involving search of the person, I doubt if anyone could read that opinion without concluding that the authorities and reasoning therein, if applied to the case before us, would compel a decision that the instant search was reasonable and lawful.

I would affirm the judgment.