**STATE of Missouri, Respondent,**

v.

**Leslie Allen ACHTER, Appellant.**

**No. 9562.**

Missouri Court of Appeals,
Springfield District.

July 22, 1974.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Albert G. Tindall, Charleston, for appellant.

BILLINGS, Judge.

Leslie Allen Achter was convicted by a Mississippi County jury of burglary and stealing and sentenced by the court as a habitual criminal. The only question presented by this appeal is the propriety of the trial court's denial of defendant's motion to suppress the use of certain evidence that was in his automobile and which had been stolen in the burglary. We affirm.

On December 20, 1972, the Bobby Johnson home near Anniston in Mississippi County was burglarized sometime between one o'clock and three o'clock in the afternoon. Among the items taken were a Revelation single-shot shotgun, a Remington electric razor, a table-type cigarette lighter, and a guitar.

At about two o'clock the same afternoon Troopers Grissom and Crismon of the Missouri Highway Patrol were in their parked patrol car on a service station parking lot which adjoined Highway 80 on the outskirts of East Prairie. The officers saw a maroon Oldsmobile approaching on the highway, headed toward East Prairie. The Oldsmobile suddenly pulled to the shoulder of the highway, stopped and the driver got out of the car and spoke to the driver of a farm tractor that the Oldsmobile had just passed. The troopers wondered why the automobile had stopped and decided to investigate.

As the patrol car drove onto the highway and toward the Oldsmobile, with its red lights flashing, the latter vehicle drove back onto the highway and "started speeding up." The Oldsmobile continued to accelerate its speed as the two automobiles neared each other. The officers recognized defendant ["a known burglar"] as the driver of the Oldsmobile when the two vehicles met. They knew defendant's Missouri license to operate a motor vehicle had been revoked and saw the license plate on the Oldsmobile had expired. The patrol car was turned around and the automobile driven by defendant pursued. During the ensuing chase defendant's car exceeded the speed limit, was driven on the wrong side of the highway and was weaving in and out of highway traffic in such an erratic manner that other motor vehicles on the highway had to pull onto the shoulder or stop in order to avoid collision with the Oldsmobile. The defendant's automobile continued on into the city limits of East Prairie at a high rate of speed and made a sudden turn on Lee Street. At this point the officers momentarily lost sight of the Oldsmobile but when they turned on Lee Street they saw defendant's car stopped in the middle of the street with the left front door standing open. Bystanders in the vicinity pointed to an alleyway and called out to the patrolmen: "There he goes."

By shank's mare Trooper Crismon went in pursuit of the defendant. He found defendant hiding behind a house a half-block from where the automobile had been abandoned and took him into custody. In the meantime Trooper Grissom had approached the defendant's car and as he started to reach through the open door to obtain the ignition keys he saw the shotgun on the rear seat, the guitar on the rear floor, the cigarette lighter on the front floor, and the razor on the right front seat. In addition, the trooper saw what appeared to be [and actually was] a rifle in a cloth case on the back seat and an automatic pistol partially pushed down between the seat and back portion of the driver's seat.

As Trooper Grissom was removing the aforementioned items from the Oldsmobile and placing them in the patrol car Trooper Crismon and the defendant approached the vehicles. Trooper Grissom asked the defendant why he "had run from us." The defendant replied that he didn't want to be caught with "that hot stuff" in his car. The defendant was charged by the troopers with (1) expired vehicle license plate, (2) driving while under revocation, (3) making a false affidavit to obtain a driver's license, and (4) careless and reckless driving. The defendant was placed in the patrol car and driven to jail by Trooper Grissom with Trooper Crismon following in the defendant's automobile. The officers were at the time unaware of the burglary at the Johnson residence since it was not discovered and reported until late that afternoon. Thereafter, the instant charges were lodged against the defendant.

The issue presented is whether the actions of Trooper Grissom, which led to the discovery and subsequent police custody of a stolen shotgun, razor, lighter, and guitar, constitute an unreasonable search and seizure within the ambit of the United States and Missouri Constitutions. Rule 33.03, V.A.M.R.

The Fourth Amendment to the United States Constitution provides "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized;" Art. 1, § 15 of the Missouri Constitution, V.A.M.S., is couched in similar language and is to the same effect. The United States Supreme Court has held that as a matter of due process under the Fourteenth Amendment to the United States Constitution evidence obtained by a search and seizure violative of the Fourth Amendment is inadmissible in state court prosecutions. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), reh.

den., 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72.

■ The prevailing rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). These exceptions are "jealously and carefully drawn," Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958), and the one who seeks to invoke such an exception has the burden of showing the need for it. Coolidge v. New Hampshire, 403 U.S. 443, 455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), reh. den., 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120; State v. Witherspoon, 460 S.W.2d 281, 284 (Mo.1970).

■ Our initial inquiry is whether defendant is potentially "a person aggrieved" by unlawful police activity so as to have the requisite standing to question that activity. Rule 33.03. The restrictions imposed by the Fourth Amendment were "designed for protection against official invasion of privacy and the security of property." Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960). Since defendant had departed from the scene of the contested police activity and possession of the items seized is not an essential element of the crime charged, defendant has no standing unless he had a proprietary or possessory interest in the automobile at the time of the police activity in question. Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); State v. Ross, 507 S.W.2d 348, 353 (Mo.1973). Whether defendant had such an interest in the automobile is not to be decided in accordance with subtle distinctions of common law property concepts, Warden v. Hayden, 387 U.S. 294, 305, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Jones v. United States, supra, but may be discerned by inquiring as to whether defendant was entitled to and did have a reasonable expectation that the automobile would be free from governmental intrusion. Mancusi v. DeForte, 392 U.S. 364, 368, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); In re J. R. M., 487 S.W.2d 502, 505–509 (Mo. banc 1972) (comprehensive analysis of United States Supreme Court decisions).

■ It is settled law that one has no standing to complain of the search or seizure of property which he has voluntarily discarded, left behind, or otherwise relinquished his interest so that he no longer retains a reasonable expectation of privacy with regard to it at the time of search or seizure. Abel v. United States, 362 U.S. 217, 239–241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (abandoned apartment); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (open field); State v. Engberg, 377 S.W.2d 282 (Mo.1964) (motel). Such an abandonment is primarily a question of intent and all relevant circumstances existing at the time of the alleged abandonment should be considered. United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973).

In fact situations closely corresponding to the facts of this case, several state and federal cases have upheld a police search of an automobile abandoned on a highway by a fleeing suspect after a high speed chase by police. United States v. Edwards, 441 F.2d 749 (5th Cir. 1971); Hunt v. Commonwealth, 488 S.W.2d 692 (Ky.1972).[1] These courts reason that by leaving an automobile on a public thoroughfare with keys in the ignition the driver voluntarily

1. State v. Moody, 485 F.2d 531 (3rd Cir. 1973) agrees that abandonment would result in loss of standing but on facts identical with those in the instant case holds the acts of the fleeing suspect to be ambiguous insofar as abandonment is concerned. The court found, however, that the facts that defendant sped away from pursuing officers in a reckless manner, left his vehicle in the middle of the street and fled on foot were sufficient to support the reasonableness of a subsequent search.

relinquishes any expectation of privacy which he otherwise would have had. Abandonment has also been found where an automobile is left at the scene of a crime due to the unexpected arrival of police before the crime's completion. Kurtz v. People, 494 P.2d 97 (Colo. banc 1972); Thom v. State, 248 Ark. 180, 450 S.W.2d 550 (1970). In the latter case Justice Byrd had this to say: ". . . Sometimes an automobile takes on the characteristics of a man's castle. Other times an automobile takes on the characteristics of an overcoat —that is, it is movable and can be discarded by the possessor at will. If appellant in his endeavors to avoid the clutches of the law had discarded his overcoat to make his flight more speedy, no one would think that an officer was unreasonably invading his privacy or security in picking up the overcoat and searching it thoroughly. In that situation most people would agree that the fleeing suspect had abandoned his coat as a matter of expediency as well as any rights relative to its search and seizure. What difference can there be when a fleeing burglar abandons his automobile to escape the clutches of the law? We can see no distinction and hold that when property is abandoned officers in making a search thereof do not violate any right or security of a citizen guaranteed under the Fourth Amendment." 450 S.W.2d at 552.

In this case it is apparent that when defendant, after being pursued by the patrolmen, left his car in the middle of the street with door open and keys in the ignition he relinquished any reasonable expectation of privacy in the automobile. Indeed, the officers would have been derelict in their duty had they failed to remove from the street a vehicle "left unattended upon a street and . . . so parked illegally as to constitute a definite hazard or obstruction to the normal movement of traffic." § 300.595, RSMo 1969, V.A.M.S.

But assuming that defendant retained some Fourth Amendment rights in the automobile we must return the question of whether the state has met its burden of showing that the circumstances of the seizure are within some exception to the warrant requirement. Both sides justify the officer's discovery of the stolen items by bandying the terms "plain view" and "automobile search" as exceptions to the requirements of a warrant; however, the defendant argues that the seizure was improper since "Trooper Grissom was unaware that a burglary or other serious crime had been committed, and, therefore, could not have known that the items were instrumentalities of the crime."

A warrantless search is permissible in circumstances where a delayed search is impractical and even dangerous; thus, a warrantless search is not forbidden when incident to a lawful arrest,[2] United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), when the subject of the search is an automobile, Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), or in other exigent circumstances, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (Hot pursuit).

A warrantless search incident to a valid arrest is permissible because of the necessity to seize weapons and other objects which might be used to assault an officer or to effect escape, as well as to prevent the destruction of evidence. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Cf. State v. Ciarelli, 416 S.W.2d 944 (Mo.1967). United States v. Robinson, supra, 414 U.S. at 235, 94 S.Ct. at 477, 38 L.Ed.2d at 441, involving an arrest for a traffic violation, holds that ". . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the war-

---

2. Where there is insufficient probable cause to arrest, the officer is entitled to make a protective search for weapons, if he discerns particular facts which create a reasonable inference that the one searched is armed and dangerous. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Kansas City v. Butters, 507 S.W.2d 49 (Mo.App.1974).

rant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." See State v. McCrary, 478 S.W.2d 349 (Mo.1972) (traffic violation). A search is incident to an arrest only if conducted substantially contemporaneously with the arrest and confined to the immediate vicinity of the arrest.[3] Vale v. Louisiana, 399 U.S. 30, 33, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Sprout, 365 S.W.2d 572 (Mo.1963). "Once an accused is under arrest and in custody, then a search [of his car] made at another place, without a warrant, is simply not incident to the arrest." Preston v. United States, supra, 376 U.S. at 367, 84 S.Ct. at 883; Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); State v. McCarty, 460 S.W.2d 630 (Mo.1970).

■ The question of to what extent a search of an automobile is justified as incident to an arrest for a traffic violation is not entirely settled.[4] An officer making an arrest has the right to search that portion of the interior of the car within which the arrestee might acquire a weapon since in ruling Robinson, supra, the Court displays concern for the fact that approximately 30% of the shootings of police officers occur when an officer approaches a person seated in a car during a traffic stop. 414 U.S. at 234, 94 S.Ct. at 476, 38 L.Ed.2d at 440, n. 5. This view was adopted by our Supreme Court in State v. Moody, 443 S.W.2d 802 (Mo.1969) but was limited to its facts in State v. Meeks, 467 S.W.2d 65 (Mo. banc 1971). Cf. State v. McCrary, 478 S.W.2d 349 (Mo.1972) (questioning Meeks). In any event, Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), reh. den., 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124, which restricts a search incident to an arrest to the arrestee's person and the area within his immediate control, i. e., the area from which the arrestee might obtain possession of a weapon or destructible evidence, would preclude the general exploratory search incident to a traffic arrest which was condemned in Meeks, supra. Application of Kizer, 419 F.2d 1134 (8th Cir. 1969) (search for stolen arrestee could have leaped there); State v. Mick, 506 S.W.2d 35 (Mo.App.1974) (Full search of vehicle for weapons requires more than arrest for traffic offense). Some cases have upheld the search of an automobile as an incident to a lawful arrest where the arrest occurs near, but not actually within, the automobile. State v. Wiley, 442 S.W.2d 1 (Mo.1969) (defendant arrested as he approached his car in a parking lot); Drummond v. United States, 350 F.2d 983 (8th Cir. 1965); Annot., 19 A.L.R.3d 727, § 9 (1968). Such authority is questionable in light of Chimel, supra, and in any event the state does not seek to justify Officer Grissom's actions as a search incident.

■ Although "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears,"[5] Coolidge v. New Hampshire, 403 U.S. 443, 461, 91 S.Ct. 2022, 2035, 29 L.Ed.2d 564 (1971), reh. den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120, the Supreme Court has long distinguished between an automobile and a home or office. Because its inherent mobility equips an automobile with the means to be moved out of a jurisdiction before a search warrant can be obtained, a search without a warrant of an automobile stopped on the highway is permitted where there is probable

---

3. Circumstances may justify a delay in a search incident to a valid arrest, as where it is reasonable to first secure substitute garments for defendant before seizing those worn at the time of arrest. United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974).

4. This is to be distinguished from the automobile exception, infra, by which search of an automobile is justified if the officer has reason to believe that the contents of the vehicle offend against the law. State v. Speed, 458 S.W.2d 301 (Mo.1970).

5. But see Cardwell v. Lewis, —— U.S. ——, 94 S.Ct. 2464, 41 L.Ed.2d —— (1974).

cause to believe it contains articles which may legally be seized, e. g., stolen property or contraband. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), reh. den., 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94. "The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." Carroll v. United States, supra, 267 U.S. at 158–159, 45 S.Ct. at 287; Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), reh. den. 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94; State v. Speed, 458 S.W.2d 301 (Mo.1970). Numerous Missouri Cases, following the rationale of the *Chambers* and *Carroll* cases, have justified a search of a vehicle in situations where the officer had reasonable cause to believe that the contents of the vehicle offended against the law. State v. Carr, 499 S.W.2d 788 (Mo.1973) (officer observed defendant place in trunk of automobile a package believed to be stolen); State v. Plant, 461 S.W.2d 736 (Mo.1971) (car hurriedly leaving rear of store believed to have been burglarized); State v. McCarty, 460 S.W.2d 630 (Mo.1970) (car matching description of automobile observed earlier at scene of burglary); Mace v. State, 458 S.W.2d 340 (Mo.1970) (officers instructed by radio to arrest defendant for grand theft).

■■■ It has already been noted herein that a search of an *entire* automobile for weapons is not permissible as the incident of a lawful arrest for a traffic violation. State v. Meeks, supra; State v. Mick, supra. A complement to that principle is the rule that a traffic violation, standing by itself, will not provide probable cause for an officer to believe that the contents of an automobile offend against the law. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 221–222, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); State v. Wither-

spoon, 460 S.W.2d 281 (Mo.1970) (arrest for improper license plate did not justify exploratory search of vehicle). The rationale for this rule is simply that a search of a vehicle is unlikely to expose evidence relevant to certain types of traffic violations, e. g., speeding, driving without a headlight, and driving without a license. See generally Annot., Search of Vehicle—Traffic Violation, 10 A.L.R.3d 314 (1966); Annot., Warrantless Searches of Automobile—Supreme Court Cases, 26 L.Ed.2d 893 (1970). When an automobile is searched without probable cause to believe that the contents offend against the law, the search cannot be justified by what is uncovered later on. State v. Witherspoon, supra, 460 S.W.2d at 287.

■■■ But the mere fact of a traffic arrest does not, *ipso facto,* forever preclude a full search of the automobile stopped. " . . . 'Accordingly, once a bona fide stop or arrest has been made for a minor violation, the police can make an additional arrest for any other offense unexpectedly discovered during the course of the investigation. If, while questioning a motorist regarding the operation of his vehicle, an officer sees evidence of a criminal violation in open view, or in some other manner acquires probable cause on a more serious charge, he may arrest for that offense and incident thereto conduct an additional search for physical evidence. Under these circumstances, neither the arrest nor the search is tied to the traffic charge, but rather to the violation later discovered.' . . . " State v. McCarthy, 452 S.W.2d 211, 215, 216 (Mo.1970) (observation of burglar's tools and other circumstances); State v. Eaton, 504 S.W.2d 12 (Mo.1973) (observation of stolen revolver); State v. Mick, 506 S.W.2d 35, (Mo.App.1974) (observation of burglar's tools); State v. Mesmer, 501 S.W.2d 192 (Mo.App.1973) (observation of items believed stolen); State v. Byrth, 395 S.W.2d 133 (Mo.1965) (observation of marijuana in driver's hand). Similarly, a traffic stop may supply an officer with probable cause

to believe that the contents of an automobile offend against the law and thus justify a complete search of the automobile irrespective of probable cause to make an arrest. State v. Whitnah, 493 S.W.2d 32 (Mo.App.1973) (driver's evasive action and observance of suspicious articles in car); State v. Hornbeck, 492 S.W.2d 802 (Mo. 1973) (numerous suspicious facts justified both arrest and search; probable cause to believe trunk contained fruits of burglary); State v. Brown, 476 S.W.2d 519 (Mo.1972) (items observed in unattended parked car believed those taken in burglary); State v. Hohensee, 473 S.W.2d 379 (Mo.1971) (observance of gun case believed to be fruit of burglary); State v. Smith, 462 S.W.2d 425 (Mo.1970) (observance of rifle and suspicious collection of clothing).

■ Situations in which an officer in the course of a traffic stop unexpectedly observes something in "plain view" which creates probable cause to arrest for an additional charge or to search for items believed to offend against the law are but a corollary of the "plain view" doctrine. Under that doctrine " . . . objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence," Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968), upon the theory that "a search is not made when the officer merely looks at that which can be seen." State v. Hohensee, 473 S.W.2d 379, 381 (Mo.1971). "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure." Coolidge

v. New Hampshire, 403 U.S. 443 at 466, 91 S.Ct. 2022 at 2038, 29 L.Ed.2d 564. The rationale of the "plain view" doctrine is that it would be " . . . a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to ignore it until [the police] have obtained a warrant particularly describing it." Id. at 468, 91 S.Ct. at 2039.

While it is unnecessary to catalogue all circumstances in which the *rationale* of the plain view doctrine applies, cf. State v. Miller, 486 S.W.2d 435 (Mo.1972) (so-called "emergency doctrine") this court notes that it has been applied to evidence observed while police are in hot pursuit of a fleeing suspect, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); State v. Miller, 499 S.W.2d 496 (Mo.1973); evidence observed in an automobile during a traffic arrest, State v. Mick, 506 S.W.2d 35 (Mo.App.1974) (burglar tools); State v. Eaton, 504 S.W.2d 12 (Mo.1972) (Stolen revolver); State v. Hawkins, 482 S.W.2d 477 (Mo.1972) (marijuana); State v. Rankin, 477 S.W.2d 72 (Mo.1972) (stolen revolver); State v. Hohensee, 473 S.W.2d 379 (Mo.1971) (same); State v. McCarthy, 452 S.W.2d 211 (Mo.1970) (burglar tools); State v. Mallory, 336 S.W.2d 383 (Mo.1960) (rifles); and evidence which is discovered " . . . not the result of a search of the car, but of a measure taken to protect the car while it was in [lawful] police custody." Harris v. United States, 390 U.S. 234, 235–236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968); cf. Annot., Inventory Search of Impounded Vehicle, 48 A.L.R.3d 537 (1973); State v. Darabcsek, 412 S.W.2d 97 (Mo.1967) (search of defendant's pockets as part of "booking" procedure for protection of defendant, attendants, other prisoners, and to prevent escape).

■ The instant case presents no question of an unlawful search and thus it is unnecessary to decide whether the facts (that defendant, a known burglar, sped away from pursuing officers in a reckless

manner, left his car in the middle of a street with a door open and then attempted to escape on foot) were sufficient to provide officers with probable cause to believe that the contents of defendant's car offended against the law so as to justify an automobile search. See note 1, supra. It is undeniable that Trooper Grissom was not engaged in an unlawful search when he observed in "plain view" in defendant's car a shotgun, razor, lighter, and guitar. Troopers Grissom and Crismon were in hot pursuit of defendant when they approached defendant's automobile in the middle of the road with the door open. The officers would have been reckless indeed if at least one had not examined the interior of the car for defendant or a possible companion. Additionally, § 300.595, supra, requires an officer to take custody of and remove automobiles abandoned in the middle of a street so as to create a traffic hazard. In such a case, " . . . the locking and securing of impounded cars, and the removal and inventory of valuable property in plain sight, are standard procedures . . . These procedures protect not only the interests of the property owner but also those of the state against a claim that property in the car at the time of impounding 'mysteriously disappeared' while the car was in custody of the authorities." United States v. Mitchell, 458 F.2d 960, 961 (9th Cir. 1972); Harris v. United States, supra.[6]

■ Defendant's only contention is that seizure of pilfered items from his car constituted an unreasonable seizure since the officer did not yet know that a burglary had occurred. The issue of whether a seized article must clearly be identified as contraband (or stolen or misappropriated) or, alternatively, whether the results of investigation may be related back to as to justify an officer's guess that an article is contraband, is said to be unresolved by Professor Scurlock. Scurlock, Basic Prin-

ciples of the Administration of Justice, 41 U.M.K.C.L.Rev. 165, 218 (1972). However, since the United States and Missouri Constitutions prohibit both unreasonable searches and unreasonable seizures it may be assumed that a lawful seizure requires that officer have knowledge of facts which create a reasonable belief that the articles seized offend against the law. Cf. Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876 (1957) (seizure of entire contents of house as incident to lawful arrest held unlawful); State v. Elkins, 245 Or. 279, 442 P.2d 250 (banc 1966) (officer needed more than mere suspicion to seize white pills although suspicion proved correct).

■ The facts adduced at the trial clearly indicate that Trooper Grissom had reasonable grounds to believe that the items seized in defendant's automobile were the fruits of a burglary. Defendant was known to Grissom as a burglar. See State v. Hornbeck, 492 S.W.2d 802, 806 (Mo.1973). Defendant had made a wild flight to avoid encounter with officers just before the seizure. The odd assortment of items found in "plain view" in defendant's car provided Officer Grissom with a concrete reason why defendant sought to avoid the officers—he didn't want to be caught with the goods. The mere fact that the crime suspected had not been reported yet, or even discovered for that matter, cannot cause the seizure to be unreasonable under the circumstances. Compare State v. Stark, 502 S.W.2d 261 (Mo.1973) (no report of stolen motorcycle); State v. Vineyard, 497 S.W.2d 821 (Mo.App.1973) (no report of stolen shirts); State v. Wrose, 463 S.W.2d 792 (Mo.1971) (new men's clothing piled in back seat); State v. Smith, 462 S.W.2d 425 (Mo.1970).

■ Additionally, the taking into custody of the stolen items was a part of the reasonable inventory procedure con-

---

6. Of course, a *full* search of a car, e. g., including the trunk, probably could not qualify as an inventory search. United States v. Lawson, 487 F.2d 468 (8th Cir. 1973).

comitant with the removal of defendant's abandoned car from the highway. Once items have been exposed to police view under unobjectionable circumstances (inventory) then no reasonable expectation of privacy is breached by an officer taking a second look at such items. United States v. Grill, 484 F.2d 990, 991 (5th Cir. 1973); Westover v. United States, 394 F.2d 164 (9th Cir. 1968).

For the foregoing reasons we find no violation of defendant's Fourth Amendment rights and hold his motion to suppress was properly overruled and the stolen items received in evidence.

The judgment is affirmed.

HOGAN, C. J., and STONE and TITUS, JJ., concur.