STATE of Missouri, Respondent,

v.

Richard Lee CONE, Appellant.

No. WD 38945.

Missouri Court of Appeals, Western District.

Feb. 2, 1988.

Harold Wayne Fraser, Edina, for appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, J., Presiding, and GAITAN and COVINGTON, JJ.

COVINGTON, Judge.

Defendant Richard Lee Cone was found guilty by a jury of manufacturing marijuana, a controlled substance, in violation of § 195.020,[1] and sentenced to a term of three years' imprisonment. On appeal, defendant assigns error claiming that the evidence was insufficient to support the verdict, and that evidence of certain items, including $16,270 cash, was inadmissible. Affirmed.

On September 8, 1985, Sheriff Billy Snodgrass of Scotland County, Missouri, having received a tip that marijuana was growing near the Iowa border in Scotland County, went to the field where the informant alleged that marijuana was growing. Snodgrass found approximately 100 plants of marijuana and took one branch of the growing marijuana to his headquarters. The following day, Sheriff Snodgrass and Sheriff Hugh Hardin of Van Buren County, Iowa, inspected the area and discovered additional marijuana plants growing. Ultimately, 723 plants were found growing on the subject property. The farm on which the marijuana was growing was owned by Charles Bechtel, who rented the land to Cone.

Sgt. Dale Belshe of the Drug and Crime Control Unit, at the request of Sheriff Snodgrass, investigated the area in which the marijuana was growing both by air and in the field. He observed that the marijua-

---

1. All statutory references are to RSMo 1984 Supp. unless otherwise noted.

na plants were growing in straight lines and that white granules, which he believed to be fertilizer, were lying at the base of the marijuana. The plants were large, had been trimmed back so that they would spread, had buds on them, and were in extremely good condition. Corn and sunflowers were planted back away from the marijuana plants. Corn stalks and weeds had been cut away to allow sunlight to reach the marijuana plants.

Surveillance was maintained on the marijuana subsequent to the inspection by Sheriff Snodgrass and Sgt. Belshe. Beginning on September 16, surveillance was increased to a 24-hour basis. On September 18, officers Belshe, Conklin, and Marlowe observed two individuals, one of whom was Richard Cone, walking along the edge of the field. Cone wore a backpack containing marijuana. Cone's companion, his hired hand, carried green material in his left hand and a corn knife in the other hand. When confronted by the officers, both Cone and his hired man ran and evaded the officers.

While chasing Cone and Richard Sterms, the hired hand, officers observed a pickup truck parked on the road which entered the marijuana field, approximately one-fourth to one-half mile from the marijuana, at a point of closest access to the area where the marijuana was growing. The passenger door to the truck was open and keys were in the ignition. The officers discovered marijuana in the bed of the truck. The truck was secured and towed to Memphis and placed in a garage.

Defendant Cone was later found and arrested at his home in Iowa. Upon arrest and after receiving advice of counsel and having been advised of his rights, he admitted that he leased the farm upon which the marijuana patches were found, that he had gone to the farm at approximately the time that the officers observed the two individuals there, and that the truck parked at the north end of the field belonged to him.

On September 20, 1985, Highway Patrolman North and Deputy Sheriff Marlowe processed the interior of the pickup truck for fingerprints and conducted an inventory search of the truck. They found inside of the compartment of the truck two tobacco cans containing marijuana and a Rice Krispies box behind the driver's seat and beside the door containing $16,270 in cash.

The offense of manufacturing marijuana consists of two elements: "1) causing the marijuana plants to have vegetal life and to encourage and promote their growth, with 2) an awareness of the character of the controlled substance." *State v. Poole,* 683 S.W.2d 326, 329 (Mo.App.1984); § 195.020. Defendant Cone concedes awareness of the character of the controlled substance. He challenges the sufficiency of the evidence to support his conviction, alleging that there was no evidence to prove that he took any steps to cause the marijuana to have vegetal life or to encourage and permit the growth of the plants.

■ A submissible case of manufacturing a controlled substance is present if there was evidence for the jury to find the "planting, cultivation, growing, or harvesting" of marijuana. *State v. Melton,* 733 S.W.2d 21 (Mo.App.1987); § 195.010(30). Harvesting is defined as "the act or process of gathering a crop." *Id.* at 22. Because the evidence of harvesting relied upon by the state was circumstantial, the facts and circumstances shown must be consistent with each other and with the hypothesis of defendant's guilt and must be inconsistent with and exclude every reasonable hypothesis of Cone's innocence. *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987). To sustain the conviction, however, circumstances need not be absolutely conclusive with guilt nor demonstrate the impossibility of innocence; mere existence of some other possible hypothesis is not sufficient to take the case from the jury. *Id.* at 213.

■ Cone leased the land upon which the marijuana was grown. The marijuana was certainly cultivated; it was large, grew in straight lines, appeared well tended, was

fertilized, trimmed back, and corn and weeds were cut away from the marijuana plants. Cone was walking along the edge of the marijuana carrying a backpack which contained green marijuana. When confronted, Cone ran, and he ran away from a truck which contained marijuana along with more than $16,000 in cash. Defendant, although not actually observed harvesting a marijuana plant, was, in essence, surrounded with marijuana; there was marijuana in his backpack, two canisters of marijuana inside the pickup truck, and dry marijuana in the bed of the truck. In fleeing from the officers, defendant left his pickup truck with his keys in the ignition, left the passenger side of the truck open, and left $16,270 in cash in the truck. Since the truck was parked one-fourth to one-half mile away from the place where Cone observed the officers, and they him, it would appear unlikely that Cone was fleeing from a possible charge of possession of marijuana as he lamely asserts. Viewing the evidence and all inferences reasonably to be drawn from it in the light most favorable to the verdict, and disregarding all contradictory evidence and inferences, *State v. Guinan*, 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984), the evidence is sufficient to support the conviction.

Richard Cone next argues that testimony regarding the money and marijuana seized from his pickup truck should have been suppressed because these items were obtained through an invalid warrantless search and seizure in violation of the Fourth and Fourteenth Amendments to the federal constitution and Missouri Constitution Article I, § 15.

The initial question is whether Cone has standing to object to the warrantless search of the 1977 Chevrolet pickup. The test for standing to assert a violation of the Mo. Const., Art. I, § 15, is whether the defendant was entitled to have and did have a reasonable expectation that the property would be free from governmental intrusion other than by a lawful search and seizure. *State v. Lingar*, 726 S.W.2d 728, 735–36 (Mo. banc 1987). In *State v. Achter*, 512 S.W.2d 894, 899 (Mo.App.1974), the defendant, after being pursued by police, left his car in the middle of the street with the door open and keys in the ignition. The court upheld the search and seizure of the vehicle, finding that, under these facts and circumstances, the defendant relinquished any reasonable expectation of privacy in the automobile, having abandoned it. The evidence in this case indicates the defendant abandoned the pickup along with whatever reasonable expectation of privacy he may have had in it when he ran from the officers, leaving the pickup with the door open and with keys in the ignition, in order to escape arrest. Where the vehicle is discarded in connection with flight from the law, protection against governmental intrusion upon the vehicle is not reasonable nor is it a legitimate expectation. *State v. Achter*, 512 S.W.2d at 900.

Assuming, arguendo, that Cone has standing, the search and seizure was valid. Warrantless searches are prima facie invalid and are subsequently permitted only if shown to have been justified by reason of specific exceptions. One who seeks to apply such an exception has the burden of showing the need for it. *State v. Peterson*, 583 S.W.2d 277, 280, 281 (Mo. App.1979). A routine warrantless inventory search is constitutionally sanctioned if the initial seizure of the car was legitimate and the search reasonable in scope. *State v. Gibeson*, 614 S.W.2d 14, 15 (Mo.App. 1981).

The circumstances were adequate to provide probable cause for the subsequent seizure and search. *State v. Brown*, 476 S.W.2d 519, 522 (Mo.1972). Deputy Marlowe had reasonable grounds to take the vehicle into custody. Deputy Marlowe, Highway Patrolman Sid Conklin, and Sgt. Belshe were conducting surveillance of the area where the marijuana was growing. The officers observed the two suspects,

later identified as Cone and Sterms, walking from the area of the marijuana growth and ordered the two to stop. The officers chased the two, but Cone and Sterms escaped. During pursuit of Cone and Sterms, the officers observed a 1977 Chevrolet pickup truck sitting on a field road about 300 yards south of the initial point of surveillance. The truck's passenger door was open and the keys were in the ignition. The officers saw no one near the truck. Sgt. Belshe and Deputy Marlowe observed marijuana in plain view in the bed of the pickup truck. Belshe and Marlowe stayed in the area of the truck, backing off along an adjoining cornfield, trying to hide in the event that the two subjects returned to the truck. They stayed with the truck until it was towed around 8:00 to 8:30 p.m. that evening. Marlowe's reasons for towing were twofold: 1) it was getting dark and they could not process the inside of the truck for fingerprints to identify the driver or owner of the truck; and 2) the marijuana was found in the bed of the truck. The marijuana found in the bed of the truck gave the officers reasonable cause to believe that the contents of the truck offended against the law and that the truck had been used to transport marijuana.

Important here also is the fact that the two suspects had fled the area when chased by police. Had Marlowe and North not kept the truck under surveillance and had it towed, the two suspects could well have returned for the truck and disappeared with the vehicle containing marijuana in its bed; exigent circumstances were present. *Id.* at 522. The seizure of the pickup truck was valid.

Once the lawfulness of police custody of the vehicle is demonstrated, a routine inventory search is not violative of the fourth amendment rights nor of Art. I, § 15, Mo. Const. The warrantless inventory search is authorized because of authorities' needs to safeguard an owner's property while the vehicle remains in custody, to protect against claims or disputes over lost or stolen property, and to guard against potential danger. *State v. Valentine,* 584 S.W.2d 92, 98 (Mo. banc 1979), *citing South Dakota v. Opperman,* 428 U.S. 364, 370, n. 5, 375, 96 S.Ct. 3092, 3097, n. 5, 49 L.Ed.2d 1000 (1976). Deputy Marlowe and Officer North inventoried the truck. Marlowe testified that an inventory was standard procedure when impounding a vehicle "so that we don't get into any problem if something comes up missing." Where, as here, the vehicle is impounded and placed in storage "with the inherent risk that the contents may be subject to pilferage or later claims of missing articles may be lodged, the inventory search finds its most common application and logical basis." *State v. Gibeson,* 614 S.W.2d at 15. Defendant's claims under the United States and Missouri Constitutions are rejected.

■ Cone's third point of error asserts that testimony regarding the $16,270 in cash found in defendant's truck should not have been admitted because it is irrelevant to the crime charged, and testimony regarding it (the money itself was not admitted) was prejudicial. The trial court is given broad discretion with respect to questions of relevancy. *State v. Brown,* 718 S.W.2d 493, 494 (Mo. banc 1986). Evidence is relevant when it logically tends to support or establish a fact at issue. *State v. Burton,* 721 S.W.2d 58, 62 (Mo.App.1986).

As noted in discussion of defendant's first point, the case was submitted to the jury on the basis of the circumstantial evidence, the facts and circumstances of which must meet the requirements set forth in *State v. Rodden,* 728 S.W.2d at 213, be consistent with the hypothesis of defendant's guilt and inconsistent with his innocence, excluding every reasonable hypothesis of his innocence. Cone claimed in his statement to the officers, which was in evidence, that he drove his pickup to the field on the day he was discovered there, but left the field to borrow a tractor from his uncle to use to move some machinery, that he then drove the tractor to his parents' house across the border, and ultimately telephoned his wife to come to pick him

up. Cone asserts lack of evidence to sustain a conviction. Testimony that the defendant ran from the officers leaving his pickup containing $16,270 in cash behind the driver's seat certainly tends to establish evidence of flight. Evidence of flight is admissible to show a consciousness of guilt contrary to any theory of innocence. *State v. Rodden,* 728 S.W.2d at 219.

Affirmed.

All concur.