STATE of Missouri, Respondent,

v.

Robert Frederick REGAZZI, Appellant.

No. 50260.

Supreme Court of Missouri,

Division No. 2.

June 8, 1964.

Charles M. Shaw; Clayton, for appellant.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Ronald R. McKenzie, Special Asst. Atty. Gen., Hannibal, for respondent.

PRITCHARD, Commissioner.

Defendant with two accomplices was charged by information with having committed the felonies of burglary of a certain store or building located at 8200 Airport Road, Berkeley, Missouri, and of stealing therefrom cigarettes, money and narcotic drugs of an approximate value of $491.80. Severance was granted and defendant being present and represented by counsel was tried by a jury which found him guilty as charged and assessed his punishment at two years in the penitentiary for each offense. After his motion for new trial was overruled, allocution was granted, judgment was entered and defendant was sentenced to a total of four years in the Department of Corrections. Defendant does not challenge the submissibility of the state's case.

The evidence which is necessary to a determination of the points raised by defendant in his appeal is as follows: Arthur P. McGlasson is a pharmacist who was the proprietor of a pharmacy at 8200 Airport Road, Berkeley, Missouri (at the southwest corner of Airport Road and Fay Avenue). On the evening of July 10, 1962, he closed his place of business, as was his custom, at ten o'clock, and remained in the building doing some book work until beyond midnight, it could have been as late as one o'clock, which would be the morning of July 11, as he testified. Upon leaving the premises he checked all four doors thereto and locked them. Shortly before five o'clock of that morning Mr. McGlasson returned to the pharmacy after being called by the Berkeley police. He found the entire prescription room at the back of the store in disarray; the safe was lying on its back with the door torn off; prescription files were all over the place; the door to the garage in the basement had been pulled halfway up; and a refrigerator in which various biologicals, vaccines and suppositories had been kept was completey cleaned out. A door leading from a doctor's and a dentist's offices (in the rear of the building) to the prescription department of the pharmacy had been jimmied—the bolt was broken and there were tool marks on the wooden portion of the door. A window at the very back of the building in the doctor's office was open. There was another door, which was unlocked, leading to the basement. At the east side of the building, along Fay Avenue, there was a parking lot, and a driveway which was about eight or nine feet wide and which went down to the basement door at about a forty-five degree angle, was also located on the east side of the building. This building was about sixty feet long north and south. At the time of his arrival at the pharmacy building after being called by the police Mr. McGlasson looked into an automobile which was parked by some high hedge bushes in front of a

house on Fay Avenue just to the rear of his store. He recognized a lot of his drugs piled on the seat and on the floor of the rear of the automobile, and identified them by the cost code marks which he had placed on the packages. These packages were marked as State's Exhibits 1 through 8 and were admitted into evidence at the trial. In the automobile were also ten cartons of Pall Mall and Chesterfield cigarettes which were missing from the store building.

Police officer David L. Carter of the City of Berkeley, was on July 11, 1962, at approximately 4:59 a. m., patrolling in a police car on Airport Road in the vicinity of Fay Avenue. He stopped at the stop sign for Fay Avenue on Airport Road upon which he was proceeding east. He then looked to his right toward the parking lot adjacent to McGlasson's pharmacy and saw two white men walking out of the driveway which led from the basement of the building. He was about sixty-five feet away at the time. The driveway was about forty to forty-five feet long, and the two men were about half the distance between the building and Fay Avenue when he saw them. It was dark at the time, but the corner was well lighted and there was a floodlight on the building which partially lighted the parking lot. Officer Carter immediately turned right and followed the men as they were walking south on Fay Avenue to a car which was placed one hundred to one hundred and ten feet south of the building. One of the men was carrying a plastic type laundry basket, which looked something like a bushel basket and which had something in it. Carter stopped and got out of the police car as the men were getting into the rear of the 1953 Chevrolet which Carter observed had no license plates on it. He then observed that there was someone seated in the driver's seat of the car, whereupon he ordered the three men out of the car (Pope, Perrin and the defendant), placed them under arrest and called for assistance. Carter identified defendant as one of the men whom he saw walking down Fay Avenue from the driveway. After other officers arrived, Carter

telephoned Mr. McGlasson, and when he arrived he went with him and Major Bray to the building where he saw a window in the rear thereof which was partially open—six to eight inches from the bottom. The window showed no signs of being forced. The three then went into the building through the open basement door, then to the upstairs where they found that door unlocked. Carter saw the safe lying down with the door pried and ripped off of it and papers, bottles and containers were strewn about. The door which led from a doctor's waiting room to the drug store had been forced open by means of some bar—it showed pry marks on the door, with damage above the lock to the right of the door and on the door jam. The open window showed no marks of being pried open, and Major Bray testified later that he could find no latent fingerprints upon the window or anywhere else.

After the three men were arrested the Chevrolet with contents intact was impounded and taken to the front of the police station where the automobile and contents were processed as evidence. In the car were a large nail bar, a sledge hammer, flashlight, the drugs and medicines (State's Exhibits 1 through 8), money in a plastic clothes basket which Officer Carter saw being carried to the car. In a plastic bucket were also four cartons of Pall Mall and five cartons of Chesterfield cigarettes; there was $138.00 paper currency, a ten dollar roll of quarters, sixteen cents in change and several checks in a white bag found in the automobile.

By stipulation it was agreed that the laboratory tests made by officers Brocksmith and Storer of the St. Louis Police Department showed that the paint from Mr. McGlasson's safe door matched that found upon a blue pry bar, a red/black pry bar, a brown work glove and three socks, all of which were found in the Chevrolet automobile at the time of defendant's arrest.

Major Bray of the Berkeley Police Department was called as a witness for defendant and testified that $169.00 found up-

on defendant's person at the time of the booking was returned to defendant as his property.

Defendant testified in his own behalf. He denied breaking into and entering Mc-Glasson's pharmacy or that he planned or conspired to do so. On the morning of his arrest he testified that he had been at his stepfather's lounge on North Lindbergh where he had been working. Perrin and Pope were in the habit of drinking at the lounge and on the morning in question they told defendant they would ride him home because defendant did not have his car with him. Defendant testified that he and the other two men were quite drunk when he got into the back seat of the car which belonged to and was driven by Pope. The next thing defendant knew was when he was awakened and there were the policemen, Pope and Perrin standing there by the car. The police told defendant to get out of the car; that he was under arrest. Defendant then observed some baskets and a sledge hammer lying by the hedge bushes, but none of the items, including the doctor's bag, was in the back seat of the car where he was sitting.

We must reverse and remand this case for a new trial by reason of two errors of the trial court in the giving and refusing of instructions to the jury. The first of these is Instruction No. C which was refused by the trial court:

"The Court instructs the jury that evidence is of two kinds, direct and circumstantial. Direct evidence is when a witness testifies directly of his own knowledge of the main facts or facts to be proven. Circumstantial evidence is proof of certain facts and circumstances in a certain case, from which the jury may infer other and connected facts which usually and reasonably follow, according to the common experiences of mankind. A crime may be proven by circumstantial evidence, as well as direct testimony of eye witnesses, but the facts and circumstances in evidence should be consistent with each other and consistent with the guilt of the defendant, and inconsistent with any reasonable theory of the defendant's innocence."

The evidence here bearing upon defendant's guilt and implicating him in the commission of the crimes of burglary and stealing is *wholly* circumstantial. This evidence is that Officer Carter saw defendant and his companion, who was carrying a basket which was later found to contain stolen items from the pharmacy, walking up the driveway of the basement of the building and on to the south on Fay Avenue. Although such facts would give rise to strong inferences that defendant and his companion had entered the building and stolen property therefrom, they are still circumstances. "Direct evidence is said to be 'evidence which if believed proves the existence of the fact in issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist.'" State v. Cox, Mo., 352 S.W.2d 665, 670 [2, 3]. See State v. Swarens, 294 Mo. 139, 241 S.W. 934, as to the inference that may be drawn from the fact of the recent unexplained possession of stolen property.

In State v. Michael, Mo., 361 S.W.2d 664, the facts showed that defendant was seen running from a side door of a burglarized store building by officers who were investigating the cause of an explosion, it being later found that an unsuccessful attempt had been made to blow open a safe in the building. The court said, loc. cit. 665, "While it would be difficult to imagine a more convincing set of circumstances indicating the commission of second degree burglary on the part of appellant, there was no direct evidence that he broke and entered the building, and of course the intent on his part in doing so could only be inferred from the circumstances. Therefore, this was a circumstantial evidence case, and

upon proper request appellant was entitled to have the court instruct the jury on the collateral issue as to the effect of or weight to be given by the jury to circumstantial evidence."

■ Instruction No. C correctly defines direct and circumstantial evidence in accordance with State v. Cox, supra, and it was error to refuse it in this case. See also State v. Jordan, Mo., 235 S.W.2d 379, as to the consistency of the facts and circumstances with each other and with the defendant's guilt, and that they must not be inconsistent with any reasonable theory of defendant's innocence.

Instruction No. 4 was given by the trial court as follows:

"All persons are equally guilty who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly is the act of all and of each one so acting. However, the mere presence of one at or near the scene of a crime does not render him liable as a participator therein. If one is only a spectator, innocent of any unlawful act or criminal intent, and does not aid, abet, assist, advise or encourage another or others in the commission of a crime, that person is not liable as a principal, or otherwise, and should be acquitted. If, however, a person be present, and by words or by actions aids, abets, assists, advises or encourages the crime, with the intent that the words or acts should encourage and abet the crime committed, then that person is equally guilty with the person who actually commits the physical deed.

"In this regard you are instructed that to find the defendant guilty of Burglary in the Second Degree it is not necessary for the defendant actually to have broken into any part of the store and building as alleged in these instructions or actually to have entered the store and building alleged; but, if you

so find and believe from the evidence beyond a reasonable doubt that the defendant was then and there present, and did anything toward the completion of the common design to commit the burglary alleged, if you so find, *by watching on the outside of the said store and building or otherwise,* then you ought to find him guilty." (Emphasis supplied.)

■■ Defendant's complaints as to this instruction are directed toward the above italicized portions thereof, and such complaints are meritorious. First, there was no evidence by which the jury could infer that defendant's part in the commission of the crimes was acting as a lookout for his accomplices. The only evidence connecting defendant with the commission of the crime was that Officer Carter saw him and another man walking from the basement driveway and to the south on Fay Avenue to the Chevrolet automobile wherein stolen drugs, medicines, cigarettes and money were found along with burglar tools which bore paint marks from Mr. McGlasson's safe. The decision in Couley v. State, 12 Mo. 462, cited by the state and from which the above emphasized portions of Instruction No. 4 were apparently taken, turned upon the propriety of an instruction upon the subject of a confession. There were other uninduced voluntary statements of defendant that he kept guard while his accomplices were committing a burglary and a larceny. Thus there was evidence that the defendant was keeping watch, and an instruction as to that fact would not have been improper. The law is well settled that instructions to the jury must be supported by the evidence in the case. State v. Scott, Mo., 230 S.W.2d 764, 767 [6, 7]; State v. Bartlett, 359 Mo. 881, 224 S.W.2d 100, 103 [4, 5].

■ Secondly, the inclusion of the words "or otherwise" in the second paragraph of Instruction No. 4 was error. The jury should be limited to a finding of specific facts, supported by the evidence in the case, upon which its verdict could be based.

Instruction A, refused by the court, would have permitted the jury to find that defendant was actually present when the burglary was committed, but instructed the jury that his presence alone did not make him guilty of the crime charged, and that before the jury could find him guilty it must be proven to its satisfaction and beyond a reasonable doubt, and that defendant rendered some aid or assistance to the actual perpetration of the crime and such aid must have been furnished with the criminal intent and for the purpose of committing the burglary as charged in the information. Instruction No. 4, above, submitted "However, the mere presence of one at or near the scene of a crime does not render him liable as a participator therein. If one is only a spectator, innocent of any unlawful act or criminal intent, and does not aid, abet, assist, advise or encourage another or others in the commission of a crime, that person is not liable as a principal, or otherwise, and should be acquitted." It thus appears that the subject matter of refused Instruction A was covered by Instruction No. 4, and the court could not be convicted of error for not submitting these matters twice. State v. Wooley, 215 Mo. 620, 115 S.W. 417, 435. However, upon retrial, an appropriate instruction should be given presenting defendant's defense that he was present when the burglary was committed, but that he did nothing toward the perpetration of the crime, and that he had no criminal intent. State v. Simon, Mo., 375 S.W.2d 102, 106 [5]; State v. Chaney, Mo., 349 S.W.2d 238, 241.

The judgment is reversed and this case is remanded for new trial.

BARRETT and STOCKARD, CC., concur.

All of the Judges concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.