STATE of Missouri,
Plaintiff-Respondent,

v.

Winfred Ray MELTON,
Defendant-Appellant.

No. 14803.

Missouri Court of Appeals,
Southern District,
Division One.

June 29, 1987.

William L. Webster, Atty. Gen., Carrie Francke, Sp. Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Roy W. Brown, Bruce B. Brown, Brown & Brown, Kearney, for defendant-appellant.

GREENE, Presiding Judge.

Defendant, Winfred Ray Melton, was jury-tried and convicted of manufacturing marihuana, § 195.020.1,[1] and thereafter sentenced to two years imprisonment for the crime. The costs of prosecuting this case, including a $4,481.77 attorney fee for a special prosecutor, were taxed against Melton.

On appeal, Melton contends, among other things, that the trial court erred in denying his motions for acquittal because the evidence was insufficient to sustain the charge against him. We agree, and reverse the conviction.

Section 195.020.1 declares that it is unlawful for a person to manufacture a controlled substance, with certain exceptions not applicable here. Marihuana is a controlled substance. § 195.017.2(4)(j). The definition of "manufacture," as that word is used in § 195.020.1, includes the meaning "production ... of a controlled substance." § 195.010(21). Production is defined as including the "planting, cultivation, growing, or harvesting" of a controlled substance. § 195.010(30).

The information charging Melton with the crime alleged that on August 24, 1985, in Oregon County, Missouri, Melton knowingly manufactured marihuana by cultivating, growing, or harvesting it. While the terms cultivating, growing, and harvesting

_____

1. Unless otherwise indicated, all references to    statutes are to RSMo 1978, V.A.M.S.

are words of common meaning and are easily understood, Missouri courts have, in the interest of preciseness, defined "cultivating" as " 'to prepare for the raising of crops; .. till ... to protect and encourage growth,' " and have defined "grow" as " 'to cause to have vegetal or animal life.' " *State v. Netzer*, 579 S.W.2d 170, 175 (Mo. App.1979). "Harvest," although not court-defined in the context used here, means "[t]he act or process of gathering a crop." The American Heritage Dictionary Of The English Language.

Keeping these definitions and statutory pronouncements in mind, we review the evidence in the light most favorable to uphold the conviction, in order to determine whether the state made a submissible case. We are mindful that the evidence on which the state relied to supply proof that Melton was cultivating, growing, or harvesting marihuana was circumstantial. It is settled law that such evidence must not only be consistent with Melton's guilt, but must exclude every reasonable hypothesis of his innocence. *State v. Prier*, 634 S.W.2d 197, 199–200 (Mo. banc 1982).

The state's version of the facts contained in its brief, which we adopt for the purpose of this opinion, reads as follows:

Around 5:00 in the morning of August 24, 1985, Sergeant Douglas Loring of the Highway Patrol was in Oregon County to assist the Oregon County Sheriff in 'trying to sit on a patch of marijuana.' He proceeded to the location of this patch with Sergeant Mike Weaver and Sergeant Danny Cargill of the Highway Patrol, Oregon County Deputy Darrell Strain and two other deputies. It was very dark and they smelled a strong aroma of marijuana. They remained at the edge of the marijuana patch until daylight arrived.

Around 8:40 a.m., Deputy Strain and Sergeant Weaver left the area to obtain a search warrant and to get additional help. After a walk-through of the area, Sergeant Cargill and Sergeant Loring had determined the area was too large for them to handle without help. Around 9:40 a.m. Sergeant Loring and the others observed a pickup come from the direction of the house, down through the field, around the edge of the timber and then continue around the timberline; the truck went two-thirds of the way around the marijuana patch and the officers lost sight of it.

Around 10:50 a.m., Sergeant Cargill heard something coming through the large patch of marijuana that they were watching, and he motioned to Sergeant Loring. The marijuana patch was heavy, tall and dense—but they could hear someone walking. They then heard plants or something being broken. They saw the top of the marijuana plants moving back and forth. Within a short time, they observed the feet of a person, boots. The person continued on 'real slow' and then stopped again; they could hear breaking and could see the tops of the plants move. Eventually they saw pant-legs, but the upper portion of the person was camoflauged [sic] due to the heavy foilage [sic]. The officers continued to observe the person continue on in a 'real slow, quiet-like manner.' He would stop, move on a step or two—and then they would hear some more cracking.

Finally, the person got very close to the officers, and they saw his face. Sergeant Loring and Sergeant Cargill identified him as the appellant. He was holding a marijuana plant in his right hand. Sergeant Loring immediately jumped up and placed appellant under arrest for cultivating marijuana. (Transcript page references omitted.)

There was no evidence in the state's case in chief that Melton owned, had any possessory interest, or control over the land where the marihuana was growing.

Melton's neighbor, John Clayton, who owned the land in question, testified that Melton had nothing to do with the marihuana patch, nor had he helped Clayton in growing, cultivating, or harvesting it. Melton had permission to be on the Clayton farm, and said that on the day in question he was looking for deer signs when he discovered the marihuana patch. As to the marihuana plant the officers saw in Mel-

ton's hand when he left the field, Melton said, "I ... didn't know where [sic] I had reached over and pulled one up to look at it or what."

The state's evidence falls abysmally short of establishing beyond a reasonable doubt that Melton grew, cultivated, or harvested the marihuana in question. We wonder why, based on the flimsy evidence the state produced at trial, Melton, a school bus driver and farmer of apparent good reputation, was ever charged in the first place.

The trial court committed prejudicial error when it denied Melton's motions for judgment of acquittal because the evidence was insufficient for the jury to be able to find, beyond a reasonable doubt, that Melton was guilty as charged. It naturally follows that since Melton's conviction must be reversed, the taxing of court costs against him, including the special attorney fee of $4,481.77, is erroneous, as our reversal constitutes an acquittal of the charge. The special prosecutor must look to the proper governmental authority for payment of his charges. See § 550.040.

Judgment reversed.

CROW, C.J., and MAUS, J., concur.

HOLSTEIN, J., recused.