STATE of Missouri, Respondent,

v.

Stephen C. DREILING, Appellant.

Stephen C. DREILING, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 43959, WD 44867.

Missouri Court of Appeals,
Western District.

April 28, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 2, 1992.

Application to Transfer Denied
June 30, 1992.

Larry A. Schaffer, Independence, Catheryn B. Starke, Blue Springs, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

In this appeal, Stephen C. Dreiling challenges his convictions and sentences for manufacturing marijuana and for misdemeanor possession of marijuana, both in violation of § 195.020, RSMo 1986. The trial court sentenced him to three years in prison for manufacturing marijuana and one year in jail, to run concurrently with the prison sentence, for marijuana posses-

sion. While his appeal was pending, Dreiling filed a motion pursuant to Rule 29.15 to set aside his convictions on the contention that he received ineffective assistance of counsel. The trial court overruled his motion after a hearing, and Dreiling appeals this ruling, too.

Law enforcement officers arrested Dreiling on August 7, 1988, after receiving tips that someone was growing marijuana in a rural area of Cedar County. They first saw Dreiling at about 11 A.M. while they patrolled the area. Dreiling was riding his bicycle to the east when the officers, traveling west, passed him. The officers decided to talk to him to determine his reason for being in the area. As they turned their patrol car around, one of the officers saw Dreiling lower a backpack from his back and throw something. The officer was about 200 yards from Dreiling and could not tell what it was.

When the officers stopped Dreiling, he was perspiring heavily. He had many "sticktights"—some sort of weed—on his clothes. While detaining Dreiling, the officers looked for what he had thrown. They did not find it immediately and let Dreiling continue on his way.

After Dreiling left, the officers continued searching. About 20 to 25 feet from where they had stopped Dreiling, on the other side of a fence running parallel to the road, they found a brown paper sack and a white envelope within two or three feet of each other. Neither showed any signs of exposure to the elements. The sack contained two bottles—a large one labeled "potassium nitrate" and a small, unlabeled one containing household ammonia—and a syringe. The envelope contained 5.3 grams of freshly cut marijuana leaves.

The officers immediately pursued Dreiling who was still riding his bicycle down the road and was not out of their sight. They arrested him for possession of marijuana and drug paraphernalia. After advising him of his constitutional rights, they took him into custody.

While Dreiling was in custody at the sheriff's office, officers obtained a search warrant to search the house which Dreiling said he rented. During their search, officers seized .7 grams of marijuana which they found in a microwave oven in the house's kitchen, an ash tray with what appeared to be marijuana butts in it, cigarette papers, a pipe, a small spoon fabricated from a nail, and a wooden tray. In an outbuilding, the officers found, but did not seize, five-inch styrofoam cups and seedstarter trays with dirt and peat moss in them.

Officers returned to where they had arrested Dreiling and found a bicycle tire track in the road. The track led to a cattle trail in a field rented by Jack Fox from whom Dreiling rented a house.[1] The cattle trail led to a 20–foot–by–25–foot marijuana patch in a clearing surrounded by timber. It was about 200 yards from a stream. Twine wrapped around stakes enclosed the patch. Two buckets were at the patch's edge. Thirty-one marijuana plants, five to six feet tall, were growing in the patch. The plants' roots were somewhat cone shaped and had peat moss clinging to them. Nearly all of the plants had been grafted in some way.

Dreiling assigns five points of error in seeking a reversal of his convictions. He assigns four more points of error to the court's overruling of his Rule 29.15 motion in which he contends that he was denied effective assistance of trial counsel.

In reviewing his contentions that the state did not present sufficient evidence to convict him, we consider all of the evidence and its inferences in a light most favorable to the verdict and cast aside all contrary evidence and inferences. *State v. Guinan*, 665 S.W.2d 325, 329 (Mo. banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). To prevail on his contention that his Rule 29.15 motion was wrongfully overruled, Dreiling must overcome a strong presumption that his trial counsel exercised reasonable professional judgment. *State v. Hamilton*, 791 S.W.2d 789, 797 (Mo.App.1990). He must demon-

---

1. The state did not establish at trial how far the point of arrest was from the field.

strate that his counsel's performance was deficient under prevailing professional standards and that he was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 *reh'g denied*, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

## Motions for Acquittal

Dreiling argues that the trial court erred in overruling his motions for judgment of acquittal because the state's evidence was insufficient to convict him. We disagree.

■ When convictions rest entirely on circumstantial evidence, as these do, the facts and circumstances establishing guilt must be consistent with each other and with a conclusion that the defendant is guilty. They also must be inconsistent with any reasonable theory of the defendant's innocence, although the evidence need not be conclusive of guilt or demonstrate the impossibility of innocence. *State v. Wahby*, 775 S.W.2d 147, 154–55 (Mo. banc 1989).

## Manufacturing Charge

■ To make a submissible case of manufacturing marijuana, the state had to present evidence from which the jury could find beyond a reasonable doubt that Dreiling was planting, cultivating, growing or harvesting marijuana. *State v. Melton*, 733 S.W.2d 21, 23 (Mo.App.1987). Dreiling concedes that someone was cultivating the marijuana growing in the patch, but he contests that the state did not link him sufficiently to the patch.

Although Dreiling had no ownership interest in the land on which the marijuana patch was located and no evidence directly showed him to have ever been in the patch, the state did sufficiently link him to the patch through circumstantial evidence. Officers found him on a bicycle in the area of the patch. They saw him throw something in the direction of where, a short distance away, they found an envelope containing more than five grams of freshly cut marijuana and a paper sack containing a common fertilizer. The envelope and sack showed no signs of weathering or exposure

to the elements. The freshness of the marijuana suggested that it was from a nearby source. That Dreiling would quickly rid himself of fertilizer and a syringe when he saw the patrol car turn around gives rise to a reasonable inference that he feared that the otherwise innocent objects would connect him to an illegal activity. A state chemist found traces of household ammonia in the marijuana plants taken from the patch. Bicycle tracks led officers a quarter-mile into the field where the marijuana patch was. Dreiling rented his house from Jack Fox who, in turn, rented the field. Dreiling had sticktights on his clothing consistent with his having walked in a field. From the items which officers found in Dreiling's outbuilding and the appearance of the marijuana plants' roots, the jury could have reasonably inferred that Dreiling had transplanted the plants into the marijuana patch. We conclude that the state's evidence of manufacturing was sufficient.

■ In his Rule 29.15 motion, Dreiling complains that his attorney did not cite "existing case law," especially the *Melton* case, in support of his motion for acquittal on the manufacturing charge. Had his attorney done so, he asserts, the trial court would have granted his motion. We disagree. The *Melton* court found the state's evidence to be "abysmally short" of establishing beyond a reasonable doubt that Melton manufactured marijuana. In reviewing the state's evidence in that case, the *Melton* court stated:

> There was no evidence in the state's case in chief that Melton owned, had any possessory interest, or control over the land where the marihuana was growing.

> Melton's neighbor, John Clayton, who owned the land in question, testified that Melton had nothing to do with the marihuana patch, nor had he helped Clayton in growing, cultivating, or harvesting it. Melton had permission to be on the Clayton farm, and said that on the day in question he was looking for deer signs when he discovered the marihuana patch. As to the marihuana plant the officers saw in Melton's hand when he left the

field, Melton said, "I ... didn't know where [sic] I had reached over and pulled one up to look at it or what."

*Id.* at 22–23. In Dreiling's case, the state offered significantly more evidence linking Dreiling to the marijuana patch—most notably the freshly-cut marijuana, the fertilizer and furtive steps to rid himself of the fertilizer, presence of household ammonia in the plants, bicycle tracks, and the plants' appearance *vis a vis* the gardening items found in Dreiling's outbuilding. The motion court properly concluded that citing such cases as the *Melton* case should not have changed the court's ruling on Dreiling's motion for acquittal.

### Possession Charge

■■■ To make a submissible case of marijuana possession, the state's evidence had to establish that Dreiling knowingly and intentionally possessed the marijuana and that he was aware of its presence and nature. *State v. Adkins,* 800 S.W.2d 28 (Mo.App.1990). The possession and knowledge elements can be satisfied from reasonable inferences drawn from circumstantial evidence. *Id.; State v. Norwood,* 721 S.W.2d 175, 178 (Mo.App.1986). When the state does not show actual possession, constructive possession will suffice, even when joint control exists, as long as other facts buttress an inference that the defendant had knowledge of the marijuana's presence. *Id.*

■■ Although the state's evidence was entirely circumstantial, and the state did not establish that Dreiling actually possessed or exclusively controlled any of the marijuana officers found, we conclude that the state presented sufficient facts for the jury to find that Dreiling possessed all of it. As previously discussed, the jury could have reasonably concluded that Dreiling possessed the envelope with marijuana in it and the 31 marijuana plants in the marijuana patch. As for the marijuana found in Dreiling's kitchen, the state established that Dreiling told officers that he rented the house from Fox, and Fox confirmed this, and gave them directions to it. A

defendant's access to an area in which drugs are found is an incriminating fact. *Adkins,* 800 S.W.2d at 30.

### Instruction

■■ Dreiling next complains that the verdict directing instruction "failed to specify which incident of marihuana possession was being submitted, thus giving the jury a roving commission to convict [Dreiling] of an uncharged incident of marihuana." The instruction tracked MAI–CR 3rd 325.02; it stated:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on August 7, 1988, in the County of Cedar, State of Missouri, the defendant possessed marihuana, a controlled substance, and
>
> Second, that defendant knew of its presence and illegal nature, then you will find the defendant guilty under Count II of possessing marihuana.

The information accurately tracked MACH–CR 32.06;[2] it alleged:

> The Prosecuting Attorney, Michael L. Ash, of the County of Cedar, State of Missouri, charges that the defendant, in violation of Section 195.020, RSMo, committed the misdemeanor of possession of marihuana, a controlled substance, punishable upon conviction under Section 195.200.1(1)(a), RSMo, in that on or about August 7, 1988, in the County of Cedar, State of Missouri, the defendant knowingly possessed marihuana, a controlled substance.

Because Dreiling did not preserve the alleged error for appeal, we must consider it pursuant to Rule 29.12(b) which provides that we can review the issue only if we find "that manifest injustice or miscarriage of justice has resulted therefrom."

■■ We do not believe that the instruction was manifestly unjust. A verdict-directing instruction is sufficient if it requires the jury to find every essential fact necessary to constitute an offense. *State*

---

**2.** Recodified on September 1, 1990, as MACH– CR 25.02.

*v. Newhart,* 503 S.W.2d 62 (Mo.App.1973). It contained the same essential elements as the information. Rule 23.01(e) provides that "[a]ll indictments or informations which are substantially consistent with the forms of indictments or informations which have been approved by [the Supreme Court] shall be deemed to comply with the requirements of this Rule 23.01(b)." Hence, we conclude that the information and instruction set forth the essential facts as required by Rule 23.01(b) and, therefore, were sufficient.

Dreiling then asserts that he suffered ineffective assistance of counsel because his attorney did not preserve the instruction issue for appeal, requiring him to overcome the plain error hurdle. We disagree. An attorney is not ineffective because he or she does not raise a meritless objection. *State v. Six,* 805 S.W.2d 159 (Mo. banc 1991). We presume that Dreiling's attorney knew that raising an objection that the instruction required more specificity would be overruled for the reasons outlined *supra.*

> If there were other facts which might have been necessary for defendant's defense then a bill of particulars under Rule 23.04 could have been sought. That was not done. Where an information alleges all essential facts constituting the offense, but fails to set out those facts necessary for an accused's defense, then the information is subject to a challenge by a bill of particulars but is not fatally defective.

*State v. Fuller,* 753 S.W.2d 328, 331 (Mo. App.1988). *See State v. Parker,* 543 S.W.2d 236, 239 (Mo.App.1976).

### Bill of Particulars

Dreiling then asserts that his trial attorney's failure to ask for a bill of particulars constituted ineffective assistance of counsel and, therefore, his Rule 29.15 motion should have been granted. For his Rule 29.15 motion to succeed, Dreiling must establish that his counsel's failure to request a bill of particulars prejudiced his defense. He has not done so.

The state relied on all three incidents of alleged marijuana possession and treated them in cumulative fashion. Had a motion for a bill of particulars been successful, Dreiling would have risked facing three counts of possession—not one.

### Search Warrant

Dreiling challenges the trial court's permitting the state to admit into evidence the .7 grams of marijuana found in the microwave oven. Dreiling argues that officers found it pursuant to a search warrant which was invalid because, in their application for the warrant, officers did not set forth facts sufficient to establish probable cause for the search.

Dreiling did not make the same objection at trial; hence, he failed to preserve the issue for our review. He asks, however, that we consider it plain error pursuant to Rule 29.12(b). Moreover, he asks that, if we conclude that the affidavit is not so lacking as to constitute plain error, we find that he received ineffective assistance of trial counsel because the attorney did not challenge the affidavit and that his Rule 29.15 motion should have been granted.

Missouri Highway Patrol Corporal J.D. Starbuck submitted a handwritten affidavit with his application for a search warrant. The affidavit stated:

> On Aug. 7, 1988 at approximately 11:00 A.M. myself & trooper J.L. Walker was traveling on a gravel road SW of Bearcreek, looking for a reported location of a marijuana plot. One mile south of M.32 at the T intersection of another gravel road, we observed a white male riding a bicycle east. As we passed the subject & stopped he was observed getting off his bicycle & taking off a backpack. He took something & threw it into the south ditch. We went back & talked with the subject who identified himself as Stephen C. Dreiling & said he was out on his bicycle for exercise. He was wet with sweat & had weeds & ticks all over him. He said he was living in a Rental House owned by Jack Fox. He continued east on his bicycle as we searched the ditch. We found an envelope with

about 25 grams of fresh Marijuana leaves, a paper sack with what appeared to be liquid & powder fertilizer & a syringe.

Subject said he was exercising on his bicycle & made this Circle from where he was renting the house, around the County road & back to his house. He left in the direction of his house.

Dreiling argues that the court should not have issued a search warrant on these facts because the affidavit did not assert "factual information that [Dreiling's] house contained controlled substances."

When we consider the totality of the circumstances in a common sense manner, as opposed to a hypertechnical manner, as directed by *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 *reh'g denied*, 463 U.S. 1237, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983), we conclude that the issuing judge had probable cause to issue the warrant. Officers had good reason to believe that the freshly cut marijuana they found in the envelope, the potassium nitrate, household ammonia, and syringe belonged to Dreiling. He had indicated to them at the time they stopped him that he had begun his bicycle ride at his house and was returning there. We conclude, therefore, that the information Corporal Starbuck put before the issuing judge established "a fair probability that contraband ... [would] be found in a particular place." This, as the court concluded in *State v. Hodges*, 705 S.W.2d 585, 588 (Mo.App. 1986), was sufficient for issuance of the warrant. We decide, therefore, that Dreiling raises neither reversible trial error nor a basis for granting his Rule 29.15 motion.

### Chain of Custody

■ Dreiling further complains that the trial court admitted into evidence the marijuana found without requiring the state to establish a proper chain of custody. The state must provide "reasonable assurance" when introducing such exhibits as the marijuana that the exhibits are the same and in like condition as when officers uncovered them. *State v. Clifford*, 815 S.W.2d 3, 7

(Mo.App.1991); *State v. Fels*, 741 S.W.2d 855, 857 (Mo.App.1987).

■ Corporal Starbuck and Sid Popejoy, the Highway Patrol chemist, provided reasonable assurances that the evidence had not been disturbed. Corporal Starbuck testified that he prepared the evidence, sealed it in containers and took it to his headquarters in the sealed containers. He stated that a technician then transferred it to the lab in Jefferson City for chemical analysis. Popejoy testified that a lab technician labeled the evidence and put it into the evidence locker. He stated that he found the evidence in a sealed container in the evidence locker. He performed chemical analysis of the evidence, resealed it in the containers and returned it to the evidence locker. Popejoy explained that an officer or technician would have transported the evidence back to Corporal Starbuck's headquarters. Corporal Starbuck testified that on the day of trial he picked up the evidence at his headquarters and that it was still sealed in the containers he had prepared.

■ The state is not required to prove hand-to-hand custody of the evidence, nor is it required to exclude every possibility that the evidence has been disturbed. *Clifford, Id.* 815 S.W.2d at 7. We conclude that the state provided reasonable assurances that the marijuana exhibits had not been disturbed.

### Conclusion

We find no merit in Dreiling's assignment of error at trial and affirm his convictions and sentences. We further affirm the motion court's overruling of his Rule 29.15 motion.

All concur.