STATE of Missouri, Plaintiff–
Respondent,

v.

John Wayne SMITH, Defendant–
Appellant.

No. 18139.

Missouri Court of Appeals,
Southern District,
Division One.

March 31, 1993.

Jacob R. Skouby, Joplin, for defendant-appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

A jury convicted the defendant, John Wayne Smith, of the misdemeanor of possessing less than 35 grams of marijuana. In accordance with the jury's verdict, the trial court imposed a sentence of one year in the Jasper County jail. He appeals from the judgment.

The defendant challenges, as erroneous, the following trial court actions: (a) rulings on for-cause challenges to certain veniremen; (b) refusal to suppress the marijuana seized as the result of an alleged unlawful search; (c) refusal to give the circumstantial evidence instruction, MAI–CR3d 310.02, and (d) overruling the defendant's motion for acquittal that was based on lack of sufficient evidence to support the verdict.

We affirm the judgment.

### FACTS

On August 24, 1991, Carthage police officers Poe and Evans responded to a call concerning a domestic disturbance at an apartment house. Upon their arrival, before going into the apartment house, they saw the defendant and his wife Anita in the area of their second story apartment arguing and cursing at one another. The officers then went to the second floor where they found the door to apartment no. 3 open. Inside were the defendant and his wife, still arguing. The officers tried to restore order by separating them and by attempting to determine what had taken place.

As Poe talked to the couple, Evans was standing just inside the doorway to the apartment. To his left, on top of a chest, Evans saw a medicine bottle. The name on the prescription label, clearly visible, was Randai Berryhill. Aware that Berryhill did not live in apartment no. 3, as she had previously moved to Kansas City, Evans asked Anita Smith who owned the medicine bottle. She replied that Randai left the bottle when she moved. Anita also told Evans that neither she nor the defendant had touched it since.

Evans picked up the bottle. He saw tablets and other unidentifiable substances in it. Opening the bottle, Evans found that it contained a clear plastic bag with what appeared to him to be marijuana. As he picked up the bottle, he also noticed another plastic bag lying behind it on the dresser also containing what appeared to be marijuana. When Evans asked Anita who it belonged to, she answered that she didn't know. Anita told Evans that she now lived in the apartment, having married the defendant "several days before." Evans then asked if there were any more controlled substances in the house, to which Anita replied, " 'No, and you can search if you would like.' "

Thereupon Evans called a fellow officer for a consent search form. When that was produced, Anita signed the form and a search of the apartment was conducted. Marijuana, in various forms, weighing nearly 500 grams, was found and seized from several locations in the apartment.[1]

Earlier, when the marijuana was first discovered, Evans gave it to Poe for transport to the police station. Poe then left with the defendant (who had been placed under arrest for domestic disturbance) before the consent form was signed by Anita.

At trial the defendant denied any knowledge of marijuana being in his apartment. His explanation for its possible presence was that it could have belonged to any number of other people because on August 24 a large number of people were in and out of the apartment attending an informal birthday party for him. The party started early in the day and continued throughout the day and evening with ongoing drinking by many people who came and went from the apartment freely.

Included in the parade of party participants was a hispanic, known only as Mar-

---

1. Details as to exactly where the marijuana was found are provided in our discussion of Point VI.

tin, who had marijuana in his possession. The defendant testified that while the party was going on at his apartment, he saw Martin carry a paper grocery bag in. Later, when the defendant's mother brought him the envelope containing marijuana, he told the crowd to leave if they had anything (presumably drugs). Thereupon, Martin stood up, took the marijuana and left the apartment, although he was later seen by the defendant and others around the apartment building. The defendant further testified that when the party got rowdy, he left for an hour and a half during which time many people had access to his apartment. Upon his return, the defendant went to bed, only to be awakened when Anita returned without a key to get in. Their argument then led to the calling of the police and their ultimate arrest.

Benjamin Harder, occupant of one of the apartments in the building, saw "Martin" with a plastic garbage bag from which he produced a plastic sandwich bag containing marijuana.

The defendant's mother, Vera Beard, came by for her son's birthday party. While at his apartment she saw 10 to 12 people in the apartment. She also saw marijuana in an envelope lying on a table in front of the divan. She confronted her son with the marijuana, whereupon Martin (the hispanic) took the marijuana, saying it was his, and put it in his pocket. She testified that her son then asked Martin to leave the apartment. The defendant's wife, Anita, testified she saw Martin in their apartment during the party, as well as many other uninvited guests.

The jury convicted the defendant of misdemeanor possession of marijuana (less than 35 grams).[2] This appeal followed.

*Striking Veniremen For Cause*

■ In his first and second points the defendant charges that the trial court erred in striking veniremen Cupp and Lauener over his objection.

During voir dire both Cupp and Lauener stated they did not believe that possession of marijuana should be a crime. Upon further questioning, however, both testified they could be impartial jurors and could follow the law as given them in instructions. Thereafter, the state's for-cause challenges to Cupp and Lauener as jurors were sustained with the following comments by the trial judge:

I realize we're getting more and more of those type answers in these type cases, but the jurors aren't a judge of their own qualifications, and if they don't believe that it's a crime, I don't think, regardless of the lip service they give, that they can really be a fair and impartial juror.

From the foregoing, the defendant argues that the trial court impaneled "a prosecution prone jury to hear his case" thereby prejudicing his rights to a fair trial. We disagree.

■ A criminal defendant is entitled to a full panel of qualified jurors before he must use his peremptory challenges. *State v. Wheat*, 775 S.W.2d 155, 158[2] (Mo.banc 1989), *cert. denied*, 493 U.S. 1030, 110 S.Ct. 744, 107 L.Ed.2d 762 (1990); *State v. Gray*, 812 S.W.2d 935, 938[1] (Mo.App.1991). However, with one exception,[3] a full panel of qualified jurors is the only requirement—an accused has no right to a specific juror or to representation on the jury of particular view points. *Lockhart*, 476 U.S. at 177–184, 106 S.Ct. at 1767–70, 90 L.Ed.2d at 150–155. The usual rule is that error may not be predicated on the sustaining of a challenge for cause if a full panel of qualified jurors is tendered for peremptory challenge. *State v. Jones*, 749 S.W.2d 356, 360[4] (Mo.banc), *cert. denied*, 488

---

**2.** Presumably the conviction for the lesser included offense occurred because of the chemist's testimony that he made no effort to separate and determine how much of the material seized was "marijuana" within the definition of § 195.010(26), RSMo 1986, and how much was not.

**3.** The exception is where the range of punishment includes the death penalty. In those cases panel members who have scruples concerning capital punishment, but who could follow the law and instructions as to punishment, cannot be excused for cause. *Lockhart v. McCree*, 476 U.S. 162, 176, 106 S.Ct. 1758, 1766, 90 L.Ed.2d 137, 149–150 (1986).

U.S. 871, 109 S.Ct. 186, 102 L.Ed.2d 155 (1988). *See Gray,* 812 S.W.2d at 938[1]. Furthermore, "[t]he state as well as a defendant has the right to a fair and impartial jury." *State v. Franks,* 702 S.W.2d 853, 856[7] (Mo.App.1985).

The defendant's argument ignores the foregoing principles. He does not claim that he was not provided a full panel of qualified jurors from which to use his peremptory challenges. He points to no evidence that would tend to show that the exclusion of Cupp and Lauener from the jury panel denied him a full panel of qualified jurors for peremptory challenge. Nor does our independent review of the record reveal any such evidence. Rather, he, in effect, says he was prejudiced because Cupp and Lauener were not included on the panel from which the state and the defendant exercised their rights to peremptorily strike jurors. This court rejected that argument in *Gray,* 812 S.W.2d at 938. We likewise reject it here.

▪ The trial court has broad discretion in evaluating the qualifications of venirepersons and its ruling on a challenge for cause will not be disturbed on appeal in the absence of a clear abuse of discretion. *Gray,* 812 S.W.2d at 938[2]. No abuse of discretion occurred here when the trial court sustained the state's challenges to Cupp and Lauener. Their answers to the questions asked afforded sufficient basis for the trial court to have concluded that Cupp and Lauener had beliefs that would affect their ability to follow the law as declared by the court in its instructions. Section 494.470.2, RSMo Supp.1989. *See Gray,* 812 S.W.2d at 938[3]. Although both veniremen said they could follow the court's instruction despite their personal beliefs, it was "for the trial court, not the venireperson, to determine whether a challenged member of the panel could be an impartial juror." *State v. Walton,* 796 S.W.2d 374, 377–78 (Mo.banc 1990).

Here, the trial court determined from the statements by Cupp and Lauener, as well as from their demeanor, that they could not be impartial jurors. We should and do defer to that decision. *State v. Owens,* 759 S.W.2d 73, 76[8] (Mo.App.1988).

Points I and II are denied.

*Failure To Sustain For Cause Challenge To Venireman*

▪ In his third point the defendant avers that the trial court erred when it denied his challenge to venireman, Gary Compton, because "Compton's responses ... failed to demonstrate that he could be a fair and impartial juror in that ... Compton only said that he thought he could be fair and impartial." He claims Compton was unqualified as a matter of law because "he was unable to unequivocally state that he could be fair and impartial given his experience as a crime victim."

During voir dire Compton stated he had been a crime victim several times. When it was finally determined that a "kid" was the perpetrator of the crimes against Compton, he became "kind of ticked ... off" when "they never did ... anything to the kid." He expressed displeasure with what he perceived to be a failure of the court system in the handling of his case. When asked if his experience caused him to be more biased toward either the defense or the prosecution, Compton answered, "I don't think so." Asked if he could be an impartial juror, if chosen, he answered, "Yeah, I think I could." He expressed a strong dislike for the person who committed crimes against him, but said that "would [not] in any way affect [his] judgment ... on anybody else." He denied that his experience would make him inclined to "push harshness toward criminals." He also stated he accepted the fact that an accused was entitled to have an attorney paid for by the state, that "[y]ou've got to have the system," and he had no problem with the presumption of innocence.

▪ Again, we observe that a defendant in a criminal case is entitled to a full panel of qualified jurors form which to make his peremptory challenges. *Wheat,* 775 S.W.2d at 158[2]; *Gray,* 812 S.W.2d at 938[1]. To qualify as a juror, a venireperson must be able to serve with an open mind free from bias and prejudice. *Walton,* 796 S.W.2d at 377[4]. "[W]here an

answer to a question suggests a possibility of bias and upon further questioning, the venireman gives unequivocal assurances of impartiality, the bare possibility of prejudice will not disqualify the juror or deprive the trial judge of discretion to seat the venireman." *Id.* at 377[6]. *See State v. Lingar,* 726 S.W.2d 728, 734 (Mo.banc), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987).

 It must clearly appear from the evidence that the challenged venireman was in fact prejudiced. *Walton,* 796 S.W.2d at 377[6]; *State v. Thompson,* 723 S.W.2d 76, 84 (Mo.App.1987). A trial court has wide discretion in determining the qualifications of members of the venire, and on appeal the trial court's ruling on a challenge for cause will not be disturbed absent a clear abuse of discretion and a real probability of injury to the complaining party. *Walton,* 796 S.W.2d at 377[7]. Testimony of the prospective juror as to his bias or lack of bias is to be considered by the trial court, although it is not conclusive. *Id.* at 378[9].

Here, venireman Compton's initial responses demonstrated his personal dislike toward a person who committed crimes against him and his displeasure at the lack of punishment for the perpetrator, yet, it never clearly appeared from the evidence that he was in fact prejudiced by his experience and could not sit as a impartial juror. When asked if he felt that he could be an impartial juror, his response was "[y]eah, I think I could." From a cold record, we cannot know if the inflections of his voice or his emphasis on certain words indicated equivocation in this answer or not. That was for the trial court to determine, and doubts as to the trial court's finding will be resolved in its favor. *Walton,* 796 S.W.2d at 378[10]. Furthermore, in response to additional questioning by both the State and the defendant, Compton clearly and unequivocally expressed that his personal experiences "would [not] in any way affect [his] judgment ... on anybody else," that he would not be "more inclined to ... push harshness toward criminals" because of his experience, and that "[y]ou've got to have

the system ... to protect the criminals' rights." He further stated he had no problem with the presumption of innocence. Thus, the additional questions evoked responses from Compton that support a finding that he could accord both sides a fair trial.

We hold that despite Compton's strong opinion concerning his own case, this record does not support a finding, as a matter of law, that he was prejudiced and could not serve as an impartial juror in this case. *See State v. Treadway,* 809 S.W.2d 58, 62[5] (Mo.App.1991); *State v. Hutchinson,* 740 S.W.2d 184, 187[5] (Mo.App.1987). We are convinced there was no real possibility of injury to the defendant because of the trial court's action regarding venireman Compton. *State v. Feltrop,* 803 S.W.2d 1, 7 (Mo.banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). We reject Point III.

*Failure to Suppress Evidence—Validity of Consent Search*

In Point IV the defendant charges error by the trial court when it overruled his motion to suppress evidence and in allowing introduction of marijuana found in his apartment. Without citing any authority and without pointing evidence to support his claim, the defendant avers that the marijuana was seized as a result of an illegal search because the search and seizure was conducted without a warrant and without a *valid* or *proper consent.*

 A search or seizure without a warrant is valid under the fourth amendment if made with proper voluntary consent. *State v. Blair,* 638 S.W.2d 739, 750[8] (Mo.banc 1982); *State v. White,* 755 S.W.2d 363, 366[1] (Mo.App.1988). In order to establish consent, the state must prove by a preponderance of the evidence that: (1) the person giving the consent did so voluntarily, and (2) that the consenter had the authority to do so. *White,* 755 S.W.2d at 366[2].

 Whether a consent to search is voluntary is to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041,

2047–48[6], 36 L.Ed.2d 854, 862–63[7] (1973); *State v. Stolzman,* 799 S.W.2d 927, 936[8] (Mo.App.1990). That determination is dependent upon many factors including, but not limited to, the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in custody, whether there was any fraud on the part of the officers, and the evidence of what was said and done by the person consenting. *Blair,* 638 S.W.2d at 750[10]; *Stolzman,* 799 S.W.2d at 936[9].

◼ Reviewing the totality of the circumstances, we conclude that Anita Smith voluntarily consented to the search. Without contradiction by the defendant, officer Evans testified that consent to search was offered by Anita before any officer made a search request. Her offer came when Evans asked if there was any other marijuana in the apartment. Throughout, Anita dealt with officer Evans only on the search issue; no large number of officers was involved. The defendant makes no claim of drawn weapons, over-emphasis of authority, fraud, coercion, or duress by Evans or other officers in procuring either Anita's verbal or written consent to search. Rather, he appears to claim that Anita was drunk to the point of being unable to give a valid consent.

The record does not support such claim. Although Anita testified she did not understand what she was signing when she signed the consent form because of her intoxication, the record reveals she had no difficulty recalling and testifying in detail to other events surrounding the incident. Officers who dealt with Anita the night of the incident testified of other incidents where they had observed Anita when she was alcohol impaired. Based upon their observations, they did not believe Anita to be intoxicated the night of this incident.

◼ The trial court found the consent was voluntary. We must affirm a trial court's ruling on a motion to suppress if the evidence is sufficient to sustain the trial court's finding. *Stolzman,* 799 S.W.2d at 936[11]. We defer to the trial court's superior opportunity to determine the credibility of the witnesses and the weight of the evidence. *Id.* at 936[12]. Viewing all of the circumstances surrounding the giving of this consent, we find the state has proven by a preponderance of the evidence that the consent was voluntarily given. *White,* 755 S.W.2d at 366.

◼ It is uncontroverted that the defendant and Anita were married at the time and that both occupied the apartment. The law is well settled that the consent to search of one person who possesses "common authority" over the premises is valid as against the absent, nonconsenting person with whom the authority is shared. *United States v. Matlock,* 415 U.S. 164, 170, 94 S.Ct. 988, 993[2], 39 L.Ed.2d 242, 249[3] (1974); *State v. McGee,* 757 S.W.2d 321, 324 (Mo.App.1988). Here, the defendant had been arrested for domestic violence and was taken from the apartment before Anita consented to the search. As a co-occupant of the apartment, Anita had equal authority to provide the police with access to the premises and contents. *McGee,* 757 S.W.2d at 324.

Point IV is denied.

*Circumstantial Evidence Instruction*

In Point V the defendant charges instructional error, specifically, in the trial court's failure to submit the circumstantial evidence instruction, MAI–CR3d 310.02,[4] requested by the defendant. Point V of the defendant's brief reads:

4. MAI–CR3d 310.02 reads:
   "Circumstantial evidence is the proof of facts or circumstances that give rise to a reasonable inference of other facts that tend to show the guilt or innocence of the defendant. Circumstantial evidence should be considered by you together with all the other evidence in the case in arriving at your verdict.
   You should not find the defendant guilty unless the facts and circumstances proved are con-

sistent with each other and the guilt of the defendant, and inconsistent with any reasonable theory of his innocence."
The Notes on Use for this instruction make its use mandatory upon the request of either party if all of the evidence in the case is circumstantial, but make its use permissive if there is both direct and circumstantial evidence in the case. *State v. Jackson,* 806 S.W.2d 426, 429 (Mo.App. 1991).

The trial court erred in refusing to give the circumstantial evidence instruction, MAI–CR3d 310.02, offered by appellant because there was no direct evidence that defendant possessed marijuana in that: the marijuana was found in an apartment in which another person lived with defendant; many others had recent access to that apartment; and there was no direct evidence that defendant knew of the presence of the marijuana in the apartment.

His entire argument in support of Point V follows:

Defendant submitted a circumstantial evidence instruction which was refused by the Court. The circumstantial evidence instruction was proper in this case because there was no direct evidence of Appellant's possession of the marijuana found in his apartment. "Direct evidence is said to be evidence which if believed proves the existence of the fact and issue without inference or presumption; while circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to logical inference that such fact does exist." State v. Ragazzi [sic], 379 S.W.2d 575, 578 (Mo.1964).

The trial court's refusal to give defendant's circumstantial evidence instruction denied him his right to due process and a fair trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 and 18(a) of the Missouri Constitution.

In response, the state first argues that the defendant failed to preserve his claim of instructional error by failing to set forth the circumstantial evidence instruction in the argument portion of his brief as required by Rule 30.06(e).[5] Furthermore, the state argues that the defendant was not prejudiced by the trial court's refusal to give MAI–CR 310.02.

Generally, failure to set forth a refused instruction in full in the argument portion of the brief fails to preserve the error, if any, for appellate review. State v. Edwards, 650 S.W.2d 655, 659[4] (Mo.App. 1983); Rule 30.06(e). However, in some cases, despite omission of the instruction from the brief, appellate review of claims of instructional error have nevertheless occurred where the refused instruction is a pattern instruction. See State v. Culkin, 791 S.W.2d 803, 812, n. 1 (Mo.App.1990); [6] State v. Wells, 586 S.W.2d 354, 358–59[6] (Mo.App.1979).

Here, we find that defendant has waived or abandoned Point V, not solely because he omitted MAI–CR 310.02 from his brief, but because of many other briefing rule violations. Rule 30.06(c) requires "a fair and concise statement of the facts relative to the questions presented for determination...." Despite a transcript of 332 pages, the defendant's statement of facts is less than one page in length (16 lines). It falls far short of the requirements of Rule 30.06(c). For example, absent is any mention of the testimony of officer Evans of his observations of the defendant inside the apartment doorway, a location where marijuana was then found atop a chest sitting just inside. Such testimony is relative to the issue of whether all evidence adduced was circumstantial or some was direct. See, e.g., Jackson, 806 S.W.2d at 429 (held, direct evidence of possession is established if the person has the substance on his person or within easy reach and convenient control).

Moreover, Rule 30.06(d) teaches that "[s]etting out only abstract statements of law without showing how they are related to any action or ruling of the court is not a compliance with" briefing rules. Rule 30.-06(e) requires that "[t]he argument ... substantially follow the order of 'Points

---

**5.** Rule 30.06(e) reads: "The argument [in the brief] shall substantially follow the order of 'Points Relied On.' If a point relates to the giving, refusal, or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief. Long quotations from cases should not be included."

**6.** In affording review, the *Culkin* court specifically noted that in doing so it was not condoning appellant's violation of the rule.

Relied On.'" Here, the defendant's brief is inadequate to preserve the claimed error. The single authority cited in Point V is *Regazzi*, 379 S.W.2d 575. It is cited only for the purpose of providing the hornbook definition of direct and circumstantial evidence.

No attempt is made in the brief to relate the definition to the facts of this case. Indeed, no attempt is made to relate the brief argument in Point V to the facts of the case. The only page references in the argument cite to the instruction conference and the location of the MAI–CR3d instruction in the legal file. No page references are given to transcript testimony that would shed light on whether all evidence was circumstantial or not. No page numbers appear to reference counsel's bold, abstract statements of law to the case. *State v. Jones*, 786 S.W.2d 926, 927 (Mo. App.1990). "It is as if this brief was written in a vacuum without any thought given to how the principles of law and facts of the case interact." *Id.* at 928. We do not function as advocates; it is not our job to make the defendant's case for him. *Id.* at 927.

For all of the foregoing reasons—not merely the omission of the instruction—the defendant has failed to preserve Point V for our review.

■ This court, gratuitously considering the inadequate statement of facts and inadequate argument under Point V, has examined the record to determine if manifest injustice or miscarriage of justice has resulted from the action of the trial court about which the defendant complains. The record reveals the defendant had free rein in presenting evidence of the parade of visitors through his apartment on the day of the incident, including evidence that "Martin" visited the apartment, having marijuana in his possession at the time. That same free rein was afforded the defendant's counsel in his argument to the jury. Examples include his arguments that a "multitude of people ... were in and out of that apartment that day," that it was not "unbelievable that somebody's going to come into the apartment ... without permission ... and leave [the marijuana] ... on the dresser," that the various locations in the apartment where the marijuana was found were easily accessible to other people wandering in and out, and that Martin was the only one seen in the apartment with marijuana.

It is not necessary that we state the defendant's evidence or his jury arguments in full. It is sufficient to observe that the jury would have understood from the evidence and arguments that they could infer that persons other than the defendant had placed the marijuana in his apartment. The record does not demonstrate "plain error" affecting substantial rights resulting in manifest injustice or miscarriage of justice resulted from the trial court's refusal to give the circumstantial evidence instruction. *State v. Gleason*, 814 S.W.2d 310, 314 (Mo.App.1991).

Point V is denied.

## Sufficiency of Evidence

■ For his final point the defendant charges that the state did not present sufficient evidence to support his conviction. Specifically, he claims the state failed to present sufficient evidence from which a jury could find an essential element of the crime, that element being *his knowledge* of the presence of marijuana in his apartment. In determining this question, we review the evidence and all reasonable inferences drawn from it in the light most favorable to uphold the verdict. *State v. McDonald*, 661 S.W.2d 497, 500[1] (Mo. banc 1983), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985); *State v. Dayringer*, 755 S.W.2d 698, 700[1] (Mo.App.1988).

■ To support a conviction for possession of marijuana the state had to produce evidence that the defendant knew and intentionally possessed the substance and was aware of its presence and nature. *State v. Dreiling*, 830 S.W.2d 521, 525[4] (Mo.App.1992). The possession and knowledge elements can be satisfied from reasonable inferences drawn from circumstantial evidence. *Id.* at 525[5]. Constructive possession will suffice, even when joint control exists, as long as other facts but-

tress an inference that the defendant had knowledge of the marijuana's presence. *Id.* at 525[6].

The defendant's access to the area where the marijuana was found is an incriminating fact not destroyed because others also had access to the area. *State v. McIntire*, 819 S.W.2d 411, 412 (Mo.App. 1991). The presence of a large quantity of drugs also supports an inference of possession and control when consistent with the totality of the circumstances. *Id.*

Here, the defendant had occupied the apartment for "a long time," whereas Anita had only recently moved in following her marriage to the defendant "several days before" this incident. Seized from the apartment was approximately 500 grams of marijuana, of various forms, found in a variety of locations within the apartment. Marijuana was first discovered in a prescription bottle allegedly belonging to Randai Berryhill, a lady known by the officer to have moved to Kansas City. The bottle was on a chest of drawers near the entry door to the apartment. A plastic bag of marijuana was in a vinyl storage closet in the southeast corner of a bedroom. Also in the same bedroom, in a chest of drawers, were two other bags of marijuana. In the kitchen, the officer smelled marijuana, and upon searching there found (a) a brown paper bag atop the refrigerator in which were six bags of marijuana, (b) two trash bags hidden behind a "foosball" table, one of which contained a 40 inch marijuana plant and the other containing paper sacks that in turn contained a "large quantity of marijuana," and (c) a tin container on the kitchen table which contained marijuana. Also present in the apartment was "burnt aluminum foil" with what appeared to be marijuana cigarette butts.

The foregoing facts provide sufficient evidence to show that the defendant had or at least shared possession of the marijuana. *State v. Steward*, 844 S.W.2d 31, 33[4] (Mo. App.1992); *McIntire*, 819 S.W.2d at 412[4]. *Compare State v. Adkins*, 800 S.W.2d 28 (Mo.App.1990); *State v. Pacchetti*, 729 S.W.2d 621, 628–29 (Mo.App.), *cert. denied*, 484 U.S. 930, 108 S.Ct. 299, 98 L.Ed.2d 258 (1987).

The defendant and Anita both testified they had no knowledge of the marijuana in the apartment. They and other defense witnesses testified that on the date the marijuana was discovered, many people attending the defendant's birthday party had been in and out of the apartment, including an unknown hispanic who had been seen with marijuana in the apartment. Whether they were telling the truth was for the jury to determine. *Steward*, 844 S.W.2d at 34. *McIntire*, 819 S.W.2d at 412. "Jurors can use their common sense." *Id.*

It would be extremely naive to take the defense testimony at face value considering all the places within the apartment where the marijuana was found. It is difficult to imagine that a wandering hispanic would have left his marijuana in other people's closets, chest of drawers, or in kitchen "tin" containers. It is equally difficult to suppose he would have carried into the apartment the plant found in the trash bag hidden behind the foosball table.

Point VI is denied. The judgment is affirmed.

PARRISH, C.J., and CROW, P.J., concur.